**Ernest F. BORUSKI, Jr.**

v.

**The UNITED STATES.**

No. 418–56.

United States Court of Claims.
Oct. 9, 1957.

Thomas H. King, Washington, D. C., for plaintiff. Robert T. S. Colby, Washington, D. C., was on the brief.

Ernest R. Charvat, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This is a suit for the recovery of pay and allowances and other benefits to which plaintiff would otherwise have been entitled from the date of the execution of a court-martial conviction and sentence for manslaughter on July 23, 1945, to August 28, 1951, the date that sentence was vacated by the Judge Advocate General of the Air Force pursuant to authority granted him by Article of War 53 * and the Act of May 5, 1950, 50 U.S.C.A. § 740, 64 Stat. 147, and an honorable discharge substituted therefor.

Plaintiff, a West Point graduate, received his commission as a second lieutenant in the Army Air Force in June 1943, and was subsequently promoted to first lieutenant on December 1, 1943. He was serving with the Army Air Force in that capacity when he was involved in an airplane accident which caused the death of a passenger in the airplane which he was piloting. At the ensuing court-martial plaintiff was found guilty of manslaughter, the findings apparently indicating that he was guilty of culpable negligence

---

* Now 10 U.S.C.A. § 873.

in causing the air accident. He was thereupon sentenced to dismissal from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor for six months. The sentence was approved on appellate review and confirmed by the Undersecretary of War. The forfeiture and confinement were remitted, however, and, as thus modified, the sentence was ordered executed. The dismissal was effectuated as of midnight July 23, 1945, and plaintiff's certificate of dismissal bore that date.

Pursuant to Article of War 53 and section 12 of the Act of May 5, 1950, supra, plaintiff on April 3, 1951, requested that the sentence of dismissal be vacated and that he be granted an administrative discharge or, in the alternative, a new trial. The petition alleged that the evidence at the trial was insufficient to support the findings of guilty of manslaughter.

Article of War 53 is as follows:

"*Petition for New Trial.*—Under such regulations as the President may prescribe, the Judge Advocate General is authorized, upon application of an accused person, and upon good cause shown, in his discretion to grant a new trial, or to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute for a dismissal, dishonorable discharge, or bad conduct discharge previously executed a form of discharge authorized for administrative issuance, in any court-martial case in which application is made within one year after final disposition of the case upon initial appellate review: *Provided,* That with regard to cases involving offenses committed during World War II, the application for a new trial may be made within one year after termination of the war, or after its final disposition upon initial appellate review as herein provided, whichever is the later: *Provided,* That only one such application for a new trial may be entertained with regard to any one case: *And provided further,* That all

action by the Judge Advocate General pursuant to this article, and all proceedings, findings, and sentences on new trials under this article, as approved, reviewed, or confirmed under articles 47, 48, 49, and 50, and all dismissals and discharges carried into execution pursuant to sentences adjudged on new trials and approved, reviewed, or confirmed, shall be final and conclusive and orders publishing the action of the Judge Advocate General or the proceedings on new trial and all action taken pursuant to such proceedings, shall be binding upon all departments, courts, agencies, and officers of the United States."

Section 12 of the Act of May 5, 1950, as codified, is as follows:

"Under such regulations as the President may prescribe, The Judge Advocate General of any of the armed forces is authorized upon application of an accused person, and upon good cause shown, in his discretion to grant a new trial, or to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute for a dismissal, dishonorable discharge, or bad-conduct discharge, previously executed, a form of discharge authorized for administrative issuance, in any court-martial case involving offenses committed during World War II in which application is made within one year after termination of the war, or after its final disposition upon initial appellate review whichever is the later: *Provided,* That only one such application for a new trial may be entertained with regard to any one case: *And provided further,* Within the meaning of this section and of Article of War 53, World War II shall be deemed to have ended as of May 31, 1951."

The Judge Advocate General of the Air Force on August 28, 1951, pursuant to the authority conferred upon him by the above-quoted article and statute, ordered that "the findings of guilty and the sen-

tence are vacated, all rights, privileges, and property of which petitioner has been deprived by virtue of the findings and sentence so vacated will be restored, and an honorable discharge certificate will be substituted in lieu of the dismissal previously executed."

The Judge Advocate General found from the facts surrounding the air crash in which plaintiff was involved that they "do not prove negligence sufficiently culpable to justify the conviction of manslaughter," and that "after careful consideration of all the evidence, I am convinced that it does not establish guilt legally or sufficiently * * * [c]onsequently, I find that an injustice has resulted from the findings and sentence and that there is good cause for granting the relief sought."

As directed, an honorable discharge was substituted but bore the date July 23, 1945, the date of the execution of the court-martial sentence.

Plaintiff here seeks to recover all rights, privileges and property of which he was deprived by virtue of the original erroneous finding from the date sentence was executed to the date of its vacation by the Judge Advocate General. Plaintiff in paragraph 5 of his petition lists such deprivations as: a commission in the regular Air Force of the United States; the pay and allowances of the rank held at the time of dismissal (first lieutenant); the periodic promotions that would have occurred, together with pay and allowances of each (captain, June 1, 1945; major, February 15, 1951); the emoluments due him under the GI Bill of Rights; accrued leave; hazard pay for performing flight duties during the entire period.

Defendant points out that for anyone to receive pay as a commissioned officer of the armed forces of the United States he must be the legal holder of that office and that the only way to become an officer is by Presidential appointment with the advice and consent of the Senate. Defendant, therefore, contends that inasmuch as the plaintiff was dismissed, rightly or wrongly, from the service on July 23, 1945, he is entitled to no pay as an officer since he did not have a legal right to the office from that date forward, and because there was no subsequent appointment by the President with the advice and consent of the Senate.

Thus, the crux of defendant's argument is that the Judge Advocate General's action did not in any way alter the fact of plaintiff's separation from military service on July 23, 1945, and that the restoration of rights, privileges and property pertained only to his status as an officer of the United States Army up to the moment of his separation from service at midnight July 23, 1945.

The court cannot agree with this construction of the effect of the Judge Advocate General's action.

█ The Judge Advocate General's action in this case is part of the judicial process. In fact, as the plaintiff terms it, it is the end result of the military judicial appellate process. Being such, the effect of his decision vacating a judgment would have the same effect as any court's vacation of judgment. The previous judgment would thereby be rendered void and of no effect. It is as though it had never been.

█ As the vacation of the court-martial sentence rendered it void and the sentence is, therefore, to be given no effect, plaintiff's purported dismissal from the service on July 23, 1945, was illegal and thus ineffective, with the necessary result that plaintiff was never dismissed from the service, at least not until the date of the Judge Advocate General's decision. The fact that the original sentence of dismissal was confirmed by the Undersecretary of War in 1945 does not make the dismissal any less ineffective. Since upon ultimate judicial determination of the case, the sentence was vacated, the Undersecretary in effect confirmed nothing. Initially, therefore, we hold that plaintiff was not dismissed from the service on July 23, 1945, because the vacated court-martial sentence rendered the dismissal void and ineffective.

The next question we must consider is the effect to be given the honorable dis-

charge issued pursuant to the Judge Advocate General's decision but backdated to July 23, 1945.

██ We feel that date was illegally or erroneously ascribed thereto and that the discharge should have been dated as of the date when the previous decision was vacated. Certainly that is the date on which the discharge became effective. The opinion rendering that decision did not order the honorable discharge to be inscribed with the earlier date. It simply ordered its substitution for the previous illegal dismissal certificate. While to substitute means to put in place of, it does not imply that the date on the substitution should be identical with the date appearing on that for which the substitution was made. In the case at hand, the earlier date was affixed purely by way of administrative and not judicial decision. If it were to be given effect, the result would be an administrative narrowing of a judicial determination. In any event, we do not think the Judge Advocate General had the authority to backdate the honorable discharge.

██ *A fortiori,* the only way an officer of the armed services can be dismissed therefrom is by those methods specifically spelled out by the statutes. Plaintiff's discharge was the result of the application of the authority granted the Judge Advocate General by the Act of May 5, 1950, supra. His written opinion and items 8 and 38 on plaintiff's discharge certificate indicate this without a doubt. Prior to the Act of May 5, 1950, the Judge Advocate General did not have the authority to grant an honorable discharge in the type of situation plaintiff's case presents. It is difficult to comprehend, therefore, how a discharge could be dated before the authority was given to grant it unless, of course, such authority was specifically granted by statute. This was not done.

Moreover, to backdate the subsequent discharge would be patently contrary to other language of the decision which specifically and without equivocation ordered restored " * * * *all* rights, privileges, and property of which petitioner has been deprived by virtue of the findings and sentence so vacated * *." [Italics ours.] This direction could not be complied with if the discharge were backdated. The Judge Advocate General's action vacating the court-martial sentence certainly would not operate retroactively to alter the rights of the accused whose rights were specifically restored by the decision of vacation.

██ We hold, therefore, that the honorable discharge, insofar as this court is concerned, in light of the Judge Advocate General's explicit and clearly written opinion should have been made effective as of the date of that opinion. The administrative action of inscribing an earlier date on plaintiff's certificate of discharge does not alter this. Thus, plaintiff is entitled to recover all rights, privileges, and property lost during the period July 23, 1945, to August 28, 1951, because of the earlier vacated court-martial sentence. There is a limit, however, to what plaintiff may recover.

█ We do not have the authority to advance him in rank, that is, to captain as of June 1, 1945; to major as of February 15, 1951; nor do we have the authority to pay him at the rate of the higher office, as he seeks in his petition, if he is not the legal holder of that rank. The only way plaintiff could have received his captaincy or majority was by Presidential appointment with the advice and consent of the Senate. Since there was no such action, plaintiff is not entitled to the pay of those higher ranks; however, he is entitled to the pay of the rank he held on July 23, 1945, first lieutenant, for the entire period. That is the office to which he was appointed and never dismissed until the action of the Judge Advocate General on August 28, 1951.

Similarly, we do not feel that he is entitled to flight pay for the period in question. For an officer to qualify for flight pay it is imperative that he participate in aerial flight, 37 U.S.C.A. § 235 (1952 Ed., Supp. IV), formerly 37 U.S.C. § 118 (1946 Ed.). Plaintiff did not participate in any aerial flight. Therefore, he cannot recover flight pay.

He is, however, entitled to any emoluments which may be presently due him under the GI Bill of Rights, as well as payment for any accrued leave to which he was entitled.

Defendant's motion for summary judgment is denied and plaintiff's motion is granted with the amount of recovery to be limited as outlined above and to be determined pursuant to Rule 38(c), 28 U.S.C.A.

Judgment will be entered to that effect.

It is so ordered.

MADDEN, WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge (dissenting).

I respectfully dissent for these reasons: The Judge Advocate General had the discretionary authority to grant a new trial or to vacate a sentence, restore rights, privileges or property affected by the sentence, and to substitute for dishonorable discharge a form of discharge authorized for administrative issuance. Section 12 of the Act of May 5, 1950, 64 Stat. 107, 147. This the Judge Advocate General did; i. e., he ordered an honorable discharge substituted in lieu of dismissal.

The majority opinion holds that the Judge Advocate General did not have authority to back date the discharge. The fallacy of this is that unless the Judge Advocate General was acting under his authority, he did not have the right to order any discharge. Plaintiff was a Regular Air Force officer and as such could not be discharged from his commission except for cause. Thus the Judge Advocate General necessarily had to recognize the court-martial in order to order any discharge. Plaintiff, in the light of the majority opinion, is still in the Army.

I believe the Judge Advocate General acted lawfully when he substituted the honorable discharge. Substitute merely means one put in place of another. Here the Judge Advocate General put the honorable discharge in place of the dishonorable dismissal, which necessarily would require him to date the substituted honorable discharge the same as the dishonorable dismissal. Thus, looking at the situation from any angle, plaintiff was out of the Army initially when he was dismissed. He never re-entered the service by reason of the substituted honorable discharge, and until reappointed in some manner would not be entitled to receive the pay of an officer.

Furthermore, the action of the Judge Advocate General was a part of the court-martial proceedings. Article 76 of the Uniform Code of Military Justice, 64 Stat. 107, 132,** gives finality to all proceedings in courts-martial and makes the action binding upon all departments, courts, agencies, and officers of the United States. Thus, this court is without authority to review and hold erroneous the back dating of plaintiff's honorable discharge.

** Now 10 U.S.C.A. § 876.