Perley W. SMITH
v.
UNITED STATES.
No. 334–57.

United States Court of Claims.
Feb. 11, 1959.

Thomas H. King, Washington, D. C., for plaintiff. Richard H. Love, Washington, D. C., was on the brief.

Paris T. Houston, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant. Arthur E. Fay, Washington, D. C., was on the brief.

WHITAKER, Judge.

Plaintiff seeks to recover the pay of his appropriate rank and grade from the date of his confinement as the result of a conviction and sentence by a general court-martial on July 20, 1949, on a charge of unpremeditated murder, to January 21, 1954, the date on which the sentence of conviction was vacated by The Judge Advocate General under authority of section 12 of the act of May 5, 1950.[1] This section, in substance, pro-

---

1. 64 Stat. 147, 50 U.S.C.A. § 740 which is as follows:

"Under such regulations as the President may prescribe, The Judge Advocate General of any of the armed forces is authorized upon application of an accused person, and upon good cause shown, in his discretion to grant a new trial, or to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute for a dismissal, dishonorable discharge, or bad-conduct discharge, previously executed, a form of discharge authorized for administrative issuance, in any court-martial case involving offenses committed during World War II in which application is made within one year after termination of the war, or after its final disposition upon initial appellate review whichever is the later: *Provided*, That only one such application for a new trial may be entertained with regard to any one case: *And provided further*, Within the meaning of this section and of article of war 53, World War II shall be deemed to have ended as of the effective date of this Act."

vides that upon application of an accused person for good cause shown The Judge Advocate General may grant a new trial or vacate a sentence, restore rights, privileges, and property affected by such sentence and substitute for a dismissal, dishonorable discharge or bad-conduct discharge previously executed, another form of discharge.

The facts as they appear from the pleadings and papers in the case are substantially as follows: On November 19, 1947, the plaintiff enlisted for a four-year period of service in the United States Army in the grade of private first class, but sometime prior to the events which led up to the instant court-martial proceedings he was reduced to the status of recruit.

On July 20, 1949, while serving in the grade of recruit, plaintiff was tried by a general court-martial and found guilty of unpremeditated murder, in violation of the 92nd Article of War.* He was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances to become due after the date of the order, and to be confined at hard labor for 30 years, which sentence was reduced to 20 years by the convening authority. The dishonorable discharge was executed on May 19, 1950.

An application for a new trial and for relief under section 12, supra, was made to The Judge Advocate General of the Army on August 9, 1951. On January 8, 1954, the then Judge Advocate General issued an order which is entitled "Action upon Petition for Relief under Section 12 of the Act of 5 May 1950". In that order it was recited that plaintiff and another recruit by the name of Lawrence[2] were convicted by general court-martial at Karlsruhe, Germany, on July 20, 1949, of unpremeditated murder in violation of the 92nd Article of War; that they were convicted upon circumstantial evidence, and that in the light of information available to the court-martial at that time it appeared that the court was justified in its findings. However, the order continued, information obtained by subsequent investigation impels the conclusion that had such information been known to the members of the court they probably would not have believed that guilt beyond a reasonable doubt was established. The Judge Advocate General's order concluded with the following:

"Pursuant to the authority granted by section 12 of an act of 5 May 1950 (50 U.S.C. 740), the sentences are vacated; all rights, privileges, and property affected by such sentences will be restored; and honorable discharges from the Army will be substituted, as of 19 May 1950 in the case of each accused, in lieu of the dishonorable discharges previously executed."

In the meantime the plaintiff remained in confinement from May 19, 1950, to September 25, 1953, on which date he was released from confinement and placed on parole.

Plaintiff asserts that he is entitled to the difference in pay of a private first class and that of a recruit from the time he was reduced in grade to the date of the execution of the dishonorable discharge on May 19, 1950, and to the full pay of a private first class from the date of the dishonorable discharge to January 21, 1954, the date of the order vacating the sentence and substituting an honorable discharge for a dishonorable one.

The defendant contends that since the honorable discharge was made effective as of May 19, 1950, the plaintiff is not entitled to recover and the case should be dismissed. Defendant further urges that in any event any pay that might be allowed pursuant to The Judge Advocate General's order should not extend beyond November 19, 1951, the date of the expiration of his regular enlistment period. It asserts that in the event any recovery is allowed it should be at the pay of a recruit in the United States

---

* Now 10 U.S.C.A. § 918.

2. The case of Lawrence is not involved in this proceeding.

Army, since the reduction in grade was made pursuant to a previous order that was entered before the events leading up to the court-martial proceeding had occurred.

Both parties discuss the case of Boruski v. United States, Ct.Cl., 155 F. Supp. 320, 323, decided October 9, 1957, in which a somewhat similar statement of facts was presented and a somewhat similar order was issued in respect to an Army officer who had been court-martialed and whose sentence was later vacated.

In that case the order vacating the original sentence stated that the facts surrounding the air crash in which plaintiff was involved "do not prove negligence sufficiently culpable to justify the conviction of manslaughter," and that "after careful consideration of all the evidence, I am convinced that it does not establish guilt legally or sufficiently, * * * [c]onsequently, I find that an injustice has resulted from the findings and sentence and that there is good cause for granting the relief sought."

It was further ordered in that case that "the findings of guilty and the sentence are vacated, all rights, privileges, and property of which petitioner has been deprived by virtue of the findings and sentence so vacated will be restored, and an honorable discharge certificate will be substituted in lieu of the dismissal previously executed."

Thus it will be seen that the circumstances and the orders in the two cases were very much alike. However, in the Boruski case, while the order for an honorable discharge was substituted for the previous dishonorable discharge, it did not specifically state that the honorable discharge should be issued as of the date of the previous dishonorable discharge, but the honorable discharge actually issued was dated back to the date of the original discharge issued pursuant to the verdict of the court-martial.

Boruski sued, *inter alia*, for his pay from the date of his conviction to the date the verdict of the court-marital was set aside. We held that he was entitled to recover. We said the postdating of the honorable discharge was not authorized by the order of The Judge Advocate General, and that any discharge issued pursuant thereto should have borne the same date as the order. From this it followed that, since The Judge Advocate General had set aside the sentence of the court-martial, the discharge then issued was a nullity, and plaintiff was entitled to recover his pay until the date of an effective discharge, which we said should have borne the date of the order of The Judge Advocate General. We held plaintiff was entitled to recover his pay in the interim.

The case now before us differs from the Boruski case in this decisive respect. In this case The Judge Advocate General ordered that the honorable discharge to be issued in lieu of the dishonorable one should be issued as of the effective date of the dishonorable discharge, whereas in the Boruski case we said it should have been dated as of the date of the order setting aside the court-martial sentence.

In the Boruski case, the plaintiff was not validly discharged, we held, until the date of the order vacating the verdict of the court-martial. Hence, he was still in the Army until that date, and therefore entitled to draw his pay. Here, under the discretion granted him by the Act of May 5, 1950, supra, The Judge Advocate General decided that the honorable discharge he ordered to be substituted for the dishonorable one should bear the same date as the dishonorable discharge. Hence, plaintiff was discharged as of that date. Thereafter, he was no longer in the Army, no longer on the payroll, and was no longer entitled to Army pay.

The Judge Advocate General's vacation of the sentence of the court-martial did not have the effect of restoring plaintiff to the payroll. He was discharged from the Army by the court-martial, dishonorably; The Judge Advocate General did not set aside the discharge; he merely changed the character of it, from dishonorable to honorable. Plaintiff was

discharged from the Army as of May 19, 1950, both by the court-martial and by The Judge Advocate General. Having been discharged as of that date, he cannot draw pay thereafter.

While the basis for our decision in the Boruski case was that the postdating of the discharge ordered by The Judge Advocate General was by way of administrative narrowing of a judicial determination, and not required by The Judge Advocate General's determination, we went on to say: "In any event, we do not think The Judge Advocate General had the authority to backdate the honorable discharge." This statement was dictum and, being an unnecessary predicate for the decision rendered, it did not receive as careful consideration as would have been given it had the decision rested upon it. The Act of May 5, 1950, quoted in part, supra, conferred broad discretion on The Judge Advocate General. He might grant a new trial, or he might vacate the sentence, and "substitute for a dismissal, dishonorable discharge, or bad-conduct discharge, previously executed, a form of discharge authorized for administrative issuance * * * ." The power to substitute one form of discharge for another certainly carries with it the power to substitute it as of the date of the one for which it is substituted.

The recital in the order of The Judge Advocate General that "all rights, privileges and property affected by such sentences will be restored" could not have been intended to include pay after the date of his discharge as a soldier. After his discharge, plaintiff was not entitled to wear the uniform, draw the pay, or exercise any other privileges of a soldier.

It is true plaintiff was incarcerated for quite some time as the result of a wrongful conviction, and it would seem that he is due reparation, but this is not the question presented to us by plaintiff's petition. He sues, not for reparation for a wrongful conviction, but for his pay, as if he had continued to be a soldier and entitled to the pay of one, notwithstanding his conviction and his discharge from the Army.

Unfortunately, innocent men are occasionally convicted of crimes they did not commit. They are due reparation therefor. Congress recognized this in the passage of the Act of May 24, 1938 (52 Stat. 438), enabling such a person to recover, if he is able to satisfy the conditions laid down in the Act. But plaintiff does not sue under this Act, probably because he cannot meet the conditions therein prescribed. Except for this Act, there is no right of recovery for wrongful conviction. Regrettable though it is that an innocent man should be thrown in prison, the sovereign is not liable therefor, except to the extent and on the conditions that it voluntarily subjects itself to liability.

Plaintiff's claim for the difference in pay between that of a private first class and that of a recruit was the result of an order issued prior to the court-martial proceedings, and was not affected by the order of The Judge Advocate General setting aside the verdict of the court-martial. The reason for that demotion is not disclosed, nor any grounds from which we can conclude that it was invalid.

Plaintiff's motion is overruled; defendant's motion is granted and plaintiff's petition will be dismissed.

It is so ordered.

LARAMORE and MADDEN, Judges, concur.

JONES, Chief Judge (dissenting).

I believe the majority opinion completely misconstrues the purport and meaning of the statute.

It seems very clear that section 12 of the act of May 5, 1950, cited in the footnote on the first page of the opinion, fully authorizes The Judge Advocate General to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute an honorable discharge for a previous dishonorable or bad-conduct discharge.

It is equally clear in the instant case that the order of The Judge Advocate General restoring all rights, privileges, and property "affected" by such sentence

was meant to cover a claim such as that presented by the plaintiff. Certainly plaintiff's pay for the balance of his enlistment period was affected by the sentence. If the court-martial sentence had not been entered he would have been entitled to finish his enlistment period. No other reasonable conclusion can be reached. Since the pay was stopped by virtue of the court-martial sentence it certainly was affected by that sentence.

The upshot of the reasoning of the majority is that since plaintiff was given a dishonorable discharge from the Army on May 19, 1950, he could not after that date draw a soldier's pay because he was no longer in the Army.

The fact that the court-martial sentence on which the discharge was based was vacated and the statute says that any rights, privileges, and property affected may be restored and that the order of The Judge Advocate General vacating the court-martial proceedings restored *"all"* rights, privileges, and property "affected" by such sentence are matters that are wholly disregarded.

He was out of the Army. Ergo, he cannot be paid.

If that were true anyone who is wrongfully discharged from Government employment could not draw any pay. How could he since he is out of the service? Of course this court has repeatedly held that he may draw his pay even though he was out of the service. We have held in numerous cases that he can recover the amount of his pay because that pay was affected by the wrongful discharge. This court cannot restore him to the service, but it has the power to give him judgment measured by what he would have received but for the wrongful discharge. Does anyone doubt for a moment that the amount of plaintiff's pay was affected by the wrongful discharge?[3]

However, the plaintiff is entitled to recover only the pay from the time of the original court-martial conviction, July 20, 1949, to the time when his enlistment period would have expired on November 19, 1951.

Plaintiff served nearly two years in prison after the date on which his enlistment would have expired. We have no authority, however, under the act and the order issued pursuant thereto to permit recovery beyond his contract period of enlistment.

Whether or not The Judge Advocate General had the power to predate the honorable discharge, which was substituted for the dishonorable discharge at the end of the judicial process, the fact remains that the language restoring *all rights, privileges, and property affected* by the original sentence remained in the substitute order.

The only way to reach the conclusion sought by the defendant is to read out of the substitute order completely the express language of restoration. This I am unwilling to do. Even if we give full and overriding effect to the predating of the substitute order, the fact still remains, big as life, that the original order actually affected the plaintiff's pay and but for that order his pay would not have been thus affected.

The plaintiff spent three years in military prison even though he was out of the Army. He was wrongfully deprived of his pay on account of a vacated order, but because forsooth the honorable discharge from the Army was dated back he must go away empty-handed.

What a strange philosophy.

---

3. By the terms of section 239 of Title II of the act amending the Articles of War approved June 24, 1948, amended Art. 108 to read as follows:

"Art. 108. Soldiers—Separation From The Service.—No enlisted person, lawfully inducted into the military service of the United States, shall be discharged from said service without a certificate of discharge, and no enlisted person shall be discharged from said service before his term of service has expired, except in the manner prescribed by the Secretary of the Department of the Army, or by sentence of a general or special court-martial." Now 10 U.S.C.A. § 3811.

Our attention has not been called to any regulation which authorizes the Department of the Army to end a contract of enlistment without cause.

As a matter of fact shining through the entire record is almost complete basis for the conclusion that The Judge Advocate General undertook to date the honorable discharge back so as to remove any possible stigma that might have attached to an unwarranted conviction rather than with any thought of depriving plaintiff of any rights and privileges.

I am persuaded to believe this rather than to think he deliberately sought to deprive a soldier, who had been improperly incarcerated, of the small amount of pay he would have otherwise received.

Since the defendant has asserted and plaintiff has not denied that the reduction from private first class to the status of recruit was made prior to the events which led up to the court-martial conviction, and was in no way related to the facts connected with that conviction, the right of recovery should be limited to the pay for the period indicated at the rate of pay of a recruit in the Army.

FAHY, Circuit Judge, sitting by designation, joins in the foregoing dissenting opinion.