### Paul PETERSON
### v.
### UNITED STATES.
### No. 83–59.

United States Court of Claims.
July 19, 1961.
Rehearing Denied Oct. 4, 1961.

Fred W. Shields, Washington, D. C., for plaintiff. King & King, Washington, D. C., were on the brief.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant.

DURFEE, Judge.

The single question presented in this case is whether the Secretary of the Navy and the Board for the Correction of Naval Records acted arbitrarily in declining to reconsider the plaintiff's request for relief.

In April 1944, while he was serving as a warrant officer in the Navy, the plaintiff was convicted by a general court-martial of an unauthorized absence and sentenced to forfeitures for six months. One year later he was again tried by a general court-martial and convicted of an unauthorized absence and disobedience of a lawful order of a superior officer. An approved sentence of dismissal was ordered into execution and the plaintiff

was, accordingly, dismissed from the Navy on May 31, 1945.

On May 4, 1948, the plaintiff applied to the Board for the Correction of Naval Records for a change in the character of his discharge, requesting also that he me reinstated. On April 26, 1949, the Board recommended that the Secretary of the Navy approve a change in plaintiff's records from separation by dismissal to separation under honorable conditions and that he be reenlisted in his former permanent enlisted grade and transferred to the U. S. Fleet Naval Reserve. The Secretary approved only the first recommendation. The Board notified the plaintiff of the decision of the Secretary on January 18, 1950. Several days later the plaintiff was informed that it had been determined that his request for reenlistment should be denied and that any further relief of this nature was beyond the jurisdiction of the Board and that any questions in this regard would have to be taken up with the Chief of Naval Personnel.

Apparently the plaintiff does not question the validity of either of his court-martial convictions nor does he contend that the actions of the Board and the Secretary, up to this point, were arbitrary or capricious. The plaintiff's present counsel wrote to the Correction Board in November 1957 inquiring whether plaintiff's case had ever been presented to the Board and whether it would be possible to reopen the case in order to obtain plaintiff's transfer to the Fleet Reserve. He was informed that the plaintiff's request for transfer to the Fleet Reserve had been fully considered at the time of the Board's initial consideration of the case and found to be lacking in merit and that reconsideration was possible only on the basis of additional evidence not previously presented.

Plaintiff's counsel again wrote to the Correction Board requesting it to further consider transferring plaintiff to the Fleet Reserve, effective as of the date of his dismissal. He again received a reply from the Board this time stating that the information submitted had been carefully examined and the conclusion had been reached that no error or injustice had been committed in not allowing the plaintiff to reenlist. Plaintiff's counsel next wrote to the Secretary of the Navy on May 1, 1958, requesting that he reopen the Peterson case and reconsider the original recommendation. An Assistant Secretary of the Navy replied to plaintiff's counsel asserting that as a result of his communication the case had been completely reexamined and further stating that the Secretary had personally considered the question of reenlisting the plaintiff on two different occasions, deciding against such action both times. The Assistant Secretary concluded by saying that in view of the offenses committed by the plaintiff, he was in complete agreement with the prior decisions not to reenlist the plaintiff. This is the action of the Secretary which the plaintiff alleges to have been arbitrary. He seeks to recover retainer or retired pay since the date of his separation, May 31, 1945.

In the May 1, 1958, letter from plaintiff's counsel to the Secretary, counsel maintained that the jurisdiction of the Correction Board had been enlarged by the Act of October 25, 1951, 65 Stat. 655, amending section 207 of the Legislative Reorganization Act of 1946, 60 Stat. 812, 837, now 10 U.S.C. § 1552, and attention was invited to the opinions of this court in Boruski v. United States, 1957, 140 Ct.Cl. 1, 155 F.Supp. 320 and Egan v. United States, 1958, 141 Ct.Cl. 1, 158 F. Supp. 377. Plaintiff's position really is that either the Board or the Secretary acted arbitrarily under the circumstances in refusing to reconsider plaintiff's request relative to the Fleet Reserve.

■ In addition to pointing out that the Fleet Reserve phase of plaintiff's case had been previously considered, in replying to the first inquiry by plaintiff's counsel the Board pointed out that its procedures authorized further hearing only upon the presentation of evidence

not previously considered.[1] Section 207 of the Legislative Reorganization Act of 1946, supra, had provided, in part, that the actions of the service Secretaries through boards of civilian officers would be accomplished under procedures set up by the Secretaries. Under this provision whether to recommend further hearings was not a matter of right but of discretion with the Board and the Secretary and, clearly, the plaintiff had not complied with the procedural requirements of the Board in order to warrant such reconsideration. In reply to a later communication on behalf of plaintiff the Board asserted that consideration had been given to the material included in that letter, and that it contained nothing that would cause the Board to alter its original decision which it considered to have been thoroughly explored. We must accept the statement of the Correction Board that it did give consideration to plaintiff's reasons for believing that he deserved to have his case reopened. Apparently they were not compelling to the Board, and it seems to us that this in itself refutes the plaintiff's claim that the Board's action was arbitrary, capricious, or unlawful.

It is true that the Secretary refused to alter his stand against affording plaintiff reconsideration in spite of the authorities offered by him in support of that position. It is also true that this was reported to plaintiff in a rather terse fashion. In taking this action the Secretary was acting under the 1956 codification of the Correction Board statute found at Title 10 U.S.C. § 1552(a) which says that a Secretary may correct a record when he considers it necessary to correct an error or to remove an injustice. Again we see that the Secretary was vested with discretionary powers under this Act to take corrective action when he considered it necessary.

Notwithstanding the brevity of the Assistant Secretary's final reply to plaintiff, it seems clear from the language of that letter that the entire matter had been reexamined including the legal arguments which had been made on his behalf. This reply also reflected that consideration had been given to the fact that the plaintiff, as a warrant officer, had been convicted of more than one offense. This hardly justifies, we think, the complaint that "[i]t is difficult to imagine a more arbitrary manner of disposing of the claim of any individual." The record indicates, on the contrary, that a considered decision as to plaintiff's application was rendered by the Assistant Secretary.

The plaintiff says that the Act of October 25, 1951, supra, enlarged the jurisdiction of the Correction Board. The principal effect of that legislation was to authorize payment of claims which were found to be due as a result of actions theretofore taken under the authority of the original section 207 of the Legislative Reorganization Act of 1946, supra. If any actions taken by the Correction Board prior to the passage of the 1951 Act had resulted in claims for loss of pay they could not have been paid until after passage of the Act.

In this connection it is interesting to note that the relief requested in 1958, namely, transfer to the Fleet Reserve as of the date of plaintiff's original dismissal on May 31, 1945, was not the same as the relief originally recommended by the Board but declined by the Secretary, which was reenlistment in the Navy as of a later date with immediate transfer to the Fleet Reserve. Unquestionably, the Secretary has general powers to supervise naval affairs. A recommendation by the Secretary that plaintiff be permitted to reenlist would not have required any further correction of naval records. Had plaintiff been permitted to reenlist and then transfer to the reserve any right to pay accruing as a result would have arisen out of a current or present record rather than from a record corrected in accordance with the original section 207 of the Act. Consequently, we do not see that the 1951 enlargement of

1. 17 Fed.Reg. 10243 (1952); 32 C.F.R. § 723.9.

the Act, if such there was, conferred jurisdiction on the Board or the Secretary to accomplish anything that could not have been accomplished originally had the Secretary decided to approve the Board's recommendation that plaintiff be reenlisted.

Furthermore, the additional extension of executive clemency inherent in the change in character of plaintiff's separation is distinct from any Board recommendation that plaintiff be allowed to reenlist and it does not necessarily follow that the Board believed that the reenlistment had to be accomplished before an injustice could be completely expunged from plaintiff's records.

 A review of the two cases principally relied on by the plaintiff reveals significant differences between them and the instant case. In the Boruski case, supra, the plaintiff made application under section 12 of the Act of May 5, 1950, 64 Stat. 107,147, 50 U.S.C.A. § 740, to have the Judge Advocate General review a court-martial conviction and sentence to dismissal. He did so and found that the evidence would not legally support a finding of guilty and that an injustice had been done the plaintiff in that case through his conviction and sentencing. He ordered the substitution of an honorable discharge effective as of the same date as the original dismissal. This court held, however, that the effective date of the discharge was the date on which the Judge Advocate General took his action vacating the court-martial sentence, and, accordingly, accrued pay and allowances were awarded. In this case, the action of the Board and the Secretary in re-characterizing plaintiff's separation was not a part of the judicial process as was the vacation of sentence for Boruski; rather it was, as we have already noted, the exercise of additional clemency. The Board did not determine that plaintiff should not have been tried and convicted. Because of both the underlying facts and the statutory procedures involved, the Boruski case cannot afford the present plaintiff any comfort.

The same must be said of the Egan case, supra, in which the petitioner had been separated honorably for medical reasons through mistaken identity. The Correction Board *cancelled* the discharge calling it "illegal and void." The present plaintiff's dismissal was not illegal or void and no such contention has been, or could be, made. To repeat, the Secretary's action, on recommendation of the Board, was in the nature of clemency. It was not required that plaintiff be reenlisted in order to either correct an error or remove an injustice.

We conclude, therefore, that neither the Board nor the Secretary acted arbitrarily in the premises regardless of the plaintiff's claim that new and broader powers had been conferred on them by the 1951 amendment to the Legislative Reorganization Act of 1946. Consequently, the plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.