Ernest F. **BORUSKI**, Jr., Appellant,

v.

**UNITED STATES GOVERNMENT** et al., Appellees.

No. 231, Docket 73-1542.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1973.

Decided Feb. 15, 1974.

Ernest F. Boruski, Jr., appellant pro se.

Howard S. Sussman, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Mel P. Barkan, Asst. U. S. Atty., of counsel), for appellees.

Before LUMBARD, FRIENDLY and OAKES, Circuit Judges.

PER CURIAM:

This is an appeal pro se from the granting of a motion for summary judgment dismissing appellant's complaint seeking to be restored to the active Air Force with the rank of Brigadier General, together with back pay amounting to $506,000,[1] in addition to compensation for damage suffered as the result of alleged inaccuracies related by military personnel at appellant's 1945 court martial and relief in the nature of mandamus against the Air Force Board for the Correction of Military Records (AFBCMR) in reference to appellant's file during and after his connection with the Air Force. Dismissal by the district court was based on two grounds. The first was on the basis that appellant obtained a judgment, Boruski v. United States, 155 F.Supp. 320, 140 Ct.Cl. 1 (1957), from the United States Court of Claims in 1957, holding that his honorable discharge was effective as of August 28, 1951, rather than the July 23, 1945, date at which he had erroneously been dishonorably discharged and awarding him back pay in the sum of $19,904.44 covering the period between July 23,

---

1. The Government argues that the district court was without jurisdiction to entertain Boruski's suit because the claim exceeds the $10,000 limit placed on that court's jurisdiction by the Tucker Act, 28 U.S.C. § 1346(a)(2). The district court held, however, that jurisdiction existed under 28 U.S.C. § 1361 to reinstate Boruski to the active Air Force with the rank of Brigadier General; implicitly the court below held that in the mandamus proceeding it would necessarily resolve the question whether Boruski was entitled to back pay, so that § 1361 provided "an alternative jurisdictional basis." The thrust of the Government's argument is that the district court should not have considered the exercise of its mandamus jurisdiction in a situation where its decision would *necessarily* resolve a question, namely a monetary claim exceeding $10,000, which is in the exclusive jurisdiction of the Court of Claims. We would be hesitant to resolve the theoretical conflict between the mandamus jurisdiction and the Tucker Act by imposing a limitation on the mandamus jurisdiction, but follow the lead of the Fifth Circuit in Mathis v. Laird, 457 F. 2d 926, 927, cert. denied, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). There, without reaching the jurisdictional question, the Court affirmed the summary judgment for the Government on the grounds of res judicata. We reach the same result.

1945, and August 28, 1951, this judgment of the Court of Claims operating as a bar under 28 U.S.C. § 2517(b).[2] The second ground for dismissal by the district court was on the basis of a collateral estoppel by virtue of that judgment, the court saying that "because the validity and effective date of Boruski's 1951 discharge has actually been litigated and decided, this court may not re-litigate this issue." The district court also held that appellant had failed to state a claim upon which the relief of mandamus against the AFBCMR could be granted in light of the lapse of several years from the time appellant first raised this issue until 1969, when he raised it here, under 10 U.S.C. § 1552(b).[3] We affirm the judgment below.

Appellant, an Army Air Force lieutenant, was court-martialed and sentenced to dismissal from the service as of July 23, 1945, as the result of a September 23, 1944, flying accident in which a passenger was killed. This court martial was subsequently reviewed by the Judge Advocate General, who found that an injustice had been done to appellant. Accordingly, on August 28, 1951, the sentence of dismissal was vacated and replaced by an administrative discharge, honorable in nature, pursuant to 50 U.S.C. § 740,[4] under the decision of the Judge Advocate General.

The honorable discharge, however, bore the date of the earlier dismissal, July 23, 1945, rather than that of the decision of the Judge Advocate General, August 28, 1951. Subsequently, after unsuccessful administrative proceedings, appellant brought an action in the Court of Claims. This culminated in the favorable judgment and award. While rejecting his claims for advancement in rank and flight pay, the court held that his discharge should have been made effective as of August 28, 1951, and awarded back pay from July 23, 1945, to that date. See Boruski v. United States, 155 F.Supp. at 324. The judgment for back pay was paid in full by the General Accounting Office in 1958.

It was not until August 29, 1969, that appellant did anything formally to indicate his dissatisfaction with the favorable result he had secured from the Court of Claims. In 1969 he filed a claim with AFBCMR, arguing that his discharge was illegal, that he should not have been discharged at all and that he was therefore entitled to full status including promotions and back pay to date. He accompanied this petition with an application for a correction of his military records. After reapplying for this relief on May 3, 1970, and revising his application as of December 20, 1970, AFBCMR denied his applications. Appellant then brought the suit below.

2. Payment of any such judgment and of interest thereon shall be a full discharge to the United States of all claims and demands arising out of the matters involved in the case or controversy.

3. No correction [of records] may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

4. Under such regulations as the President may prescribe, the Judge Advocate General of any of the armed forces is authorized upon application of an accused person, and

upon good cause shown, in his discretion to grant a new trial, or to vacate a sentence, restore rights, privileges, and property affected by such sentence, and substitute for a dismissal, dishonorable discharge, or bad-conduct discharge, previously executed, a form of discharge authorized for administrative issuance, in any court-martial case involving offenses committed during World War II in which application is made within one year after termination of the war, or after its final disposition upon initial appellate review whichever is the later: *Provided*, That only one such application for a new trial may be entertained with regard to any one case: *And provided further*, Within the meaning of this section and of Article of War 53, World War II shall be deemed to have ended as of May 31, 1951.

■■ The clear language and import of 28 U.S.C. § 2517(b) is that payment of a final judgment rendered by the Court of Claims against the United States "shall be a full discharge" to the United States "of all claims and demands arising out of the matters involved in the case or controversy." Appellant did not seek an award of pay up to the time of judgment in the Court of Claims, but only "all rights, privileges, and property of which he was deprived by virtue of the original erroneous finding from the date sentence was executed *to the date of its vacation* by the Judge Advocate General." 155 F.Supp. at 323 (emphasis added). Therefore, under § 2517(b) and the general res judicata principles applied to the Court of Claims in 28 U.S.C. § 2519, appellant cannot be awarded further back pay. The issue of the validity of appellant's honorable discharge could have been presented to the Court of Claims, but was not, and the decision of the Court of Claims thus bars any suit for back pay after August 28, 1951. 155 F.Supp. at 324.[5]

■ As regards the appellant's request to correct alleged errors in his files, no such formal request was made after the Court of Claims case until August 29, 1969, when he filed a claim with AFBCMR, arguing that his discharge was illegal and seeking to have the records changed accordingly. Under 10 U.S.C. § 1552(b), however, "no correction may be made . . . unless the claimant . . . files a request therefor before October 26, 1961, or within three years after he discovers the

error or injustice, whichever is later." While it is true that under the statute "[the] board . . . may excuse a failure to file within three years after discovery if it finds it to be in the interests of justice," the Board expressly refused to make such a finding "in light of his dilatory pursuit of this matter," since he took no action between 1957 and 1969.[6] In view of the non-action of appellant between 1957 and 1969, we do not find that the AFBCMR abused its discretion. For the same reasons of delay, the court was justified in refusing to order that appellant be restored to active service. Moreover, much of the relief actually sought by appellant in terms of his records he has already obtained. For example, he asked that the 1947 action of the Board for Correction of Military Records denying his request that his court martial conviction be set aside be expunged from the records, but of course the Judge Advocate General in 1951 did set aside his court martial findings and sentence, so that it is as if the 1947 Board records were null and void. So, too, appellant sought to have removed a "less-than-Superior" efficiency report for the period during which he was removed from duty, but the AFBCMR found that this report "is not presently contained in his records" and that therefore the relief which he sought to this extent had already been had. Appellant's request to change the records so as to show that he had never been properly released from active duty, of course, was properly denied in light of the fact, as we have said, that he can-

5. In deciding Boruski's claim, the Court of Claims ruled that the Judge Advocate General's decision vacated the judgment of the court martial, rendering it null and void, and that Boruski was not dismissed from the service until the date of the Judge Advocate General's decision. 155 F.Supp. at 323. It is true that, under decisions of the Court of Claims, were it not for the discharge ordered by the Court of Claims to date as of August 28, 1951, § 2517(b) would not operate to bar Boruski's claim for pay subsequent to that date. *E. g.*, Register v. United States, 281 F.2d 448, 449, 150 Ct.Cl. 752 (1960). But the Court of Claims here de-

termined "that the honorable discharge, insofar as this court is concerned, in light of the Judge Advocate General's explicit and clearly written opinion should have been made effective as of [August 28, 1951]." 155 F.Supp. at 324. Additionally, 28 U.S.C. § 2401(a), the six-year statute of limitations for suits against the United States, would bar any action to change the 1951 honorable discharge if that discharge was in any way wrongfully imposed.

6. The Board also made an adverse determination on the merits of the individual records referred to.

not now contest his honorable discharge as of 1951.

In short, it appears that appellant was indeed originally done an injustice, but that he pursued with counsel's assistance as well as on his own the available remedies of law to enable him to correct this injustice, and ultimately obtained substantial relief by having his dishonorable discharge rescinded and an honorable discharge entered, as well as by obtaining back pay and allowances for a six-year period from the time of his original dishonorable discharge to the date of its correction to an honorable discharge in 1951. Having obtained this relief in 1957, at this late date he seeks even further and greater relief, but time and the operation of the statutes now prevent us from granting any further or new relief.

Judgment affirmed.