George E. SCHUENEMEYER,
III, Petitioner,

v.

UNITED STATES, Respondent.

Appeal No. 84–1716.

United States Court of Appeals,
Federal Circuit.

Nov. 4, 1985.

John E. Corcoran, Jr., Washington, D.C., submitted, for petitioner.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director, Charles L. Schlumberger, and Charles R. Gross, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted, for respondent.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

COWEN, Senior Circuit Judge.

Following our unpublished decision in *George E. Schuenemeyer, III v. United States,* 770 F.2d 177 (Fed.Cir.1985), which reversed the decision of the United States Claims Court (Claims Court), 6 Cl.Ct. 97 (1984), petitioner filed an application for an award of costs and attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. We grant the application.

### Background

Petitioner, a commissioned officer in the Air Force, was released from active duty on June 30, 1977, as a Captain because he had been twice passed over by Air Force Selection Boards for promotion to Major. He then enlisted in the Air Force and served continuously thereafter. Appearing *pro se* in the Claims Court, he brought suit in May 1981, alleging that he had been

illegally passed over and seeking various forms of relief as a result of that illegal action.

In 1984, the Government moved that the court enter a judgment directing the Air Force to reinstate petitioner as a Captain and to correct his records, (a) to show that he had served continuously on active duty from July 1, 1977 as Captain until reinstatement, (b) to void and expunge one of the Officer Efficiency Reports which was considered in the prior passovers, and (c) to void and expunge his non-selection for promotion to Major. The Government also consented to award petitioner back pay less offsets, and the Claims Court entered such an order in March 1984.

In the computation of the back active duty pay to which he was entitled under the order of the Claims Court, petitioner contended and the Government denied that he was entitled to flight pay. The Claims Court adopted the Government's position that under the governing statutory provision and on the basis of the decision in *Boruski v. United States*, 140 Ct.Cl. 1, 155 F.Supp. 320 (1957), petitioner was not entitled to flight pay during the period in issue, because he had not engaged in "frequent and regular performance of operational or proficiency flying duty required by orders."

On appeal to this court, the Government conceded that under the statutes and regulations applicable to flight pay, petitioner was entitled to recover flight pay based on longevity in the performance of flight duties and his continued qualification to perform. On the basis of that concession and our rejection of the Government's contentions that petitioner was not qualified for the disputed flight pay, we held that since petitioner was illegally separated and his reinstatement ordered, he was entitled to flight pay the same as if he had been on active duty as a Captain during the entire period of his separation.

*Discussion*

I.

The EAJA provides that a prevailing party shall be awarded attorney fees in any civil action against the United States unless the court finds that the position of the United States was substantially justified or that special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

Some guidance for applying the statutory standard is provided by the following legislative history:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and in fact, no award will be made. In this regard, the strong deterrents to contesting Government action require that the burden of proof rest with the Government.

*See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4989.

When Congress extended the EAJA, Pub.L. No. 99–80, 99 Stat. 183 (1985), the re-enacted section 2412(d)(1)(A) contained the "substantially justified" language without change. However, the House Report which accompanied H.R. 2378, the bill which was passed, stated:

> Another problem which has developed in the implementation of the Act has been the fact that courts have been divided on the meaning of "substantial justification." Several courts have held correctly that "substantial justification" means more than merely reasonable. Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.

H.R.Rep. No. 120, 99th Cong., 1st Sess. 9 (1985).

One of the cases cited with approval in the House Report on this question is *Spencer v. NLRB*, 712 F.2d 539, 558 (D.C. Cir.1983), wherein the court stated that the test "substantially justified" should be slightly more stringent than "reasonably justified."

Although the burden is on the Government to prove substantial justification, the mere fact that it lost the case on appeal to this court does not show that its position in defending the decision of the Claims Court was not substantially justified. However, a corollary of this principle is that the position of the United States is not shown to have been substantially justified merely because the Government prevailed before the Claims Court and endeavored to uphold the decision in its favor on appeal to us. *Broad Avenue Laundry & Tailoring v. United States*, 693 F.2d 1387, 1391–92 (Fed.Cir.1982).

## II.

▇ In its primary litigating position in the Claims Court, the Government persuaded the court to hold that petitioner was not entitled to flight pay during his separation period because 37 U.S.C. § 301a(a)(1), and the decision of the Court of Claims in *Boruski, supra*, required that the petitioner must have engaged in frequent and regular performance of flying duty during the relevant period. The Government's attorneys must have known but failed to inform the trial court that the applicable statute was 37 U.S.C. § 301a(a)(4), rather than § 301a(a)(1), and that under the implementing regulation, Air Force Regulation 60–1, petitioner was entitled to incentive flight pay without engaging in regular flying duty because he had completed 132 months of operational flying by the 18th year of his aviation service. We think that the Government's attorneys were aware of the fact that 37 U.S.C. § 301a(a)(4) was added pursuant to the Aviation Career Incentive Act of 1974, Pub.L. No. 93–294, 88 Stat. 177, a statute which was not in effect when *Boruski* was decided. The Government also neglected to advise the Claims Court that *Boruski* was decided 7 years before § 301a(a)(4) was enacted, and that the decision was based upon a statute which has no application to the facts in this case. Consequently, we think the conclusion is inescapable that the Government's primary litigating position in the Claims Court was not substantially justified. *Cf. Natural Re-*

*sources Defense Council, Inc. v. EPA*, 703 F.2d 700, 712 (3d Cir.1983).

On appeal to this court, the Government abandoned its attempt to justify the basis for the Claims Court decision and agreed that under the statutes and regulations bearing on flight pay, petitioner was entitled to flight pay based on longevity in the performance of flight duties and his continued qualification to perform those duties at the time he was separated. Having made that concession, the Government then advanced two other defenses to petitioner's claim. If it were needed, these inconsistent positions of the Government provide another ground for holding that its primary litigating position in the Claims Court was not substantially justified. *Spencer, supra*, at 560–61.

## III.

In his pleading prior to the decision of the Claims Court on cross-motions for the entry of judgment, petitioner correctly pointed out that since he had completed 132 months of operational flying by the 18th year of his service, he was entitled under the applicable statute and Air Force Regulations to incentive flight pay without being required to perform frequent flying duties. The Government then countered with the argument that since he was separated from active duty on July 1, 1977, he was precluded from receiving Aviation Career Pay during his separation by the provisions of AFR 35–13. That regulation provided in pertinent part as follows:

3–6. *Qualification for Aviation Career Incentive Pay (ACIP).* An officer, who is entitled to basic pay, holds a currently effective aeronautical rating, or is enrolled in undergraduate flying training and is qualified for aviation service according to this regulation and AFR 60–1, is entitled to Aviation Career Incentive Pay.

3–7. *Termination of Aviation Service.* Active aviation service ends when the officer's aeronautical order is no longer

valid, or when suspension or disqualification action is imposed.

a. *Validity.* When a rated officer who is qualified for aviation service separates from active duty, the officer's aviation status becomes invalid. See section E for specific invalidation and revalidation procedures for rated officers recalled to active duty or assigned to the Air Reserve Force.

The trial judge did not rule on the application of this regulation, but in the appeal to this court, the Government again urged it as a defense to petitioner's claim for the recovery of flight pay. In our decision of April 19, 1985, we held that since he had been illegally separated in 1977 and was ordered reinstated, he had the right to be treated as if he had been on active duty as a Captain all during the period of his separation and that under Air Force Regulations, he was entitled to flight pay without further proof on his part that he remained qualified. Our holding was based on *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 813 (1979).

The Government's attorneys in the Civil Division of the Department of Justice who participated in this case are presumed to have been familiar with the decision in *Sanders* and related cases, and should have known that since petitioner was illegally separated, the regulation relied on is not applicable in his case.

Therefore, we hold that there was no reasonable basis in law for the Government's reliance on the quoted regulation and that the Government has failed to discharge its burden of proving that it was substantially justified in basing its defense thereon.

### IV.

In the appeal to this court, Government's third defense against the claim for flight pay was that petitioner had failed to establish that he was ready, able and willing to qualify for flight duty. In making this argument, Government relied on *Armand v. United States*, 136 Ct.Cl. 339 (1956), and contests petitioner's application on the ground that the decision is a binding precedent which justified its position.

The difficulty with this contention is that there was no reasonable factual basis for the Government's position. In *Armand*, the Court of Claims denied compensation to a reinstated employee for the earnings he would otherwise have received during the period of his separation. The decision was based on the fact that on the date the employee was separated, he was hospitalized in a mental hospital and did not receive full release until nearly a year later. Moreover, he received a disability pension from the Veterans Administration during the entire period of his separation and neither sought nor obtained work elsewhere during that period. By contrast, the record here shows that during the period of his separation, petitioner performed his duties as an enlisted man and there is no showing that he was physically incapacitated during any part of that time. Moreover, if petitioner was not qualified for Aviation Career Incentive Pay, the Air Force could have cancelled or suspended his aeronautical orders in accordance with AFR 35–13. He correctly argued in the Claims Court that there is no evidence anywhere in the record that the Air Force undertook to do so prior to his separation or thereafter.

Our decision of April 19, 1985, stated that if the Government believed that petitioner somehow lost his pre-existing qualification for flight pay, it was up to the Government to make that particular showing. The opinion also stated as follows:

> In fact, there has been no proof or real suggestion of his disqualification by the Government and we have no reason to believe that appellant, who served on active duty as an enlisted man was at all disabled during that period.

Since we have found that there was no reasonable factual basis for the Government's reliance on *Armand*, we conclude that the Government's position was not substantially justified. *Ellis v. United States*, 711 F.2d 1571, 1576–77 (Fed.Cir. 1983); *Tyler Business Services Inc. v.*

*NLRB*, 695 F.2d 73, 76 (4th Cir.1982); *Wolverton v. Schweiker*, 533 F.Supp. 420, 425 (D.Idaho 1982).

### V.

The application for attorney fees is accompanied by an affidavit of Richard L. Swick, one of petitioner's attorneys, stating that in representing him in the appeal, Mr. Swick spent a total of 31.3 hours for services which are itemized in the affidavit, and that costs of $56.15 were incurred in connection with the appeal. The affiant further states that $100 is the standard hourly rate for his services involving correction of military records and that petitioner is entitled to attorney fees at that hourly rate under the provisions of 28 U.S.C. § 2412(b), which incorporates the common law or American rule, rather than at an hourly rate of $75, as provided in 28 U.S.C. § 2412(d). The claim is based on the contention that the hourly rate of $100 should be approved because in the Claims Court, as well as in the appeal to this court, "the Government exhibited unexpected bad faith and acted vindictively and harshly toward appellant in disregard of its duty under the statute and regulations." Petitioner relies on *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–60, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975) and *F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). The Government does not challenge the number of hours claimed for the attorney's services and does not question the amount of costs sworn to have been incurred. However, the Government relies on *Estate of Berg v. United States*, 231 Ct.Cl. 466, 687 F.2d 377, 383 (1982), and contends that since petitioner has failed to show that the Government's conduct of the litigation was reprehensible, the award for attorney fees should be limited to a maximum of $75 per hour.

After a careful review of the record in this case, we cannot say that the Government's conduct of the litigation, as a whole, was reprehensible or, in the language of the Supreme Court, that the Government's attorneys acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich Co., Inc., supra,* at 129. Therefore, we hold that petitioner is entitled to recover attorney fees at an hourly rate of $75, rather than at $100 per hour as claimed. Petitioner is also entitled to recover the amount claimed as costs.

### VI.

Attached to the application, there is also an affidavit of John E. Corcoran, Jr., one of petitioner's attorneys, stating that the attorney spent a total of 9 hours in preparing the application for an award of attorney fees and costs; that the usual and customary charge for the attorney's services is $100 per hour, and accordingly, that petitioner is entitled to an additional $900 for the preparation of the application. The Government objects strenuously to this claim on the ground that EAJA does not provide for reimbursement of post-litigation costs and expenses incurred in applying for attorney fees. However, we agree with the decisions of several courts which have held that attorney fees incurred in the preparation of an application for fees are compensible under the EAJA. *See Tyler Business Services, Inc. v. NLRB*, 695 F.2d 73, 77 (4th Cir.1982); *Fincke v. Heckler*, 596 F.Supp. 125, 129 (D.Nev.1984); *Correa v. Heckler*, 587 F.Supp. 1216, 1225 (S.D.N.Y.1984).[1] However, we limit the award for these services to a rate of $75 per hour.

---

1. In awarding fees pursuant to other statutory attorney fees provisions, courts have held that fees and costs incurred in preparing the fee applications are reimbursable. *See, e.g., Jones v. MacMillan Bloedel Containers, Inc.*, 685 F.2d 236, 239 (8th Cir.1982) (awarding attorney fees incurred in preparation of fees application pursuant to 42 U.S.C. § 1988 in employment discrimination case); *Spray-Rite Service Corp. v.*

*Monsanto Co.,* 684 F.2d 1226, 1250 (7th Cir. 1982) (awarding attorney fees for time devoted to compiling and presenting fees application pursuant to 15 U.S.C. § 15 in antitrust case); *Lund v. Affleck*, 587 F.2d 75, 77 (1st Cir.1978) (awarding attorney fees for time spent establishing rights to fee award pursuant to 42 U.S.C. § 1988); *Prandini v. National Tea Co.,* 585 F.2d 47, 53–54 (3d Cir.1978) (awarding attorney fees

### Conclusion

It follows from the foregoing opinion that petitioner is entitled to an award of $3,022.50 for attorney fees, plus $56.15 for costs incurred. Accordingly, judgment is entered in his favor for the sum of $3,078.65.

for time expended in obtaining reasonable fee award pursuant to 42 U.S.C. § 2000e–5(k) in class action discrimination case).