Durfee, Judge,
delivered tbe opinion of the court;
This case comes before the court on cross-motions for summary judgment.
Robert Faircloth, a hospitalman apprentice in the TJ.S. Navy, was given an undesirable discharge on October 12, 1961, for reasons of unfitness, pursuant to the Bureau of Naval Personnel (Bu Pers) Manual, Article C-10311, as it was then written.[1] On October 23, 1962, Faircloth filed an application with the Navy Discharge Eeview Board to cor *136 rect this discharge, and on April 23, 1963 this request was denied. Thereafter, on October 28, 1963 plaintiff filed an application with the Board for Correction of Naval Records. The Board, on November 2,1961 refused to correct plaintiff’s discharge to show an honorable discharge as of the date of the expiration of his enlistment (July 23,1963) but did correct the discharge to provide for a general discharge by reason of unfitness as of October 12,1961. As a result of such actions, plaintiff is suing for loss of back pay he would have received had he not been so discharged, contending that the discharge and the refusal to correct it were 'arbitrary, capricious and unlawful.
Plaintiff’s argument that his discharge was arbitrary, capricious and unlawful is grounded on his contention that the Navy’s own regulations were not followed, and hence procedurally defective. Specifically, 32 C.F.R. § 730.12 (Bu Pers Manual, Article C-10311(3) (f)), provided:
H; & He H* H*
(a) Enlisted personnel may be separated by reason of unfitness with an undesirable discharge or with a higher type discharge when it is warranted by the ¶articular eircvmstanees in a given ease. A discharge by reason of unfitness, regardless of the attendant circumstances, will be effected only when directed by or authorized by the Chief of Naval Personnel.
(b) Attention is directed to § 730.14, which prescribes the procedure for submission of reports and recommendations for discharge by reason of unfitness. [Emphasis supplied]
32 C.F.R. §730.14 (Bu Pers Manual, Article C-10313) reads in pertinent part:
* * * * #
(a) The cases of enlisted personnel under consideration for discharge by reason of unsuitability, unfitness, or misconduct under §§ 730.10, 730.12 or 730.13 respectively shall be prepared as set forth herein. Commanding officers shall ensure that complete 'and carefully prepared briefs are submitted and that instructions in this section are scrupulously adhered to.
*137 (c) An enlisted person wbo is subject to undesirable discharge by reason of unfitness under §730.12 or by reason of misconduct under § 730.13 shall, if his whereabouts is known, be informed as to the circumstances which are the basis for the contemplated action and afforded an opportunity to request or waive, in writing, any or all of the following privileges:
(1) To have his case heard by a board of not less than three officers.
(2) To appear in person before such board * * *.
(3) To be represented by counsel * * *.
(4) To submit statements in his own behalf.
$ $ $ $ $
(d) Those cases processed under § 730.12 or § 730.13 wherein the individual waives or does not request field board action and those cases wherein the individual is processed under § 730.10 shall be forwarded, together with all pertinent papers, direct to the Chief of Naval Personnel to final action.
(e) When discharge under § 730.10 or § 730.12 is contemplated, a brief shall be prepared * * * in accordance with the following instructions:
# Hi * Hi ífí
(4) Enclosures. * * *
# Hi ❖ Hi
(iii) Individual’s signed request for or waiver of privileges outlined in paragraph (c) of this section. * * *
Viewing § 730.12 and § 730.14 together, we construe them to mean that any discharge “by reason of unfitness,” even if it is a higher type discharge than an undesirable discharge, necessitates the granting of the privileges enumerated in 32 C.F.R. § 730.14(c), including the right to a hearing, if the serviceman requests them.
Before plaintiff was discharged, he had been questioned on March 17,1961 about suspected homosexual acts. Pursuant to 32 C.F.R. .§ 730.15(c) (Bur Pers Manual C-10313(A) (3)), plaintiff requested a resume of the investigation being made of his actions, and the resume given to him on September 14,1961 was replete with allegations of homosexual acts. On September 16, 1961 plaintiff was furnished a brief concerning the c'ase against him. It listed his military offenses, *138 venereal disease infections, and a summary of bis indebtedness. There were several enclosures, including the resume of homosexual acts previously furnished to plaintiff. That same day plaintiff made a signed statement in which he noted that he had been afforded the opportunity to request or waive the privileges afforded under Bu Pers Manual, Article C-10313, including the privilege to have the case heard by a board of not less than three officers. Plaintiff then wrote:
I do not desire to elect or reject any of the above privileges.
Plaintiff made another statement on September 19,1961, to wit:
I have been advised that I may be discharged under other than honorable conditions and the reasons therefor. I understand such discharge may deprive me of virtually all veterans [sic] benefits based upon my current period of active service, and that I may expect to encounter substantial prejudice in civilian life in situations wherein the type of service rendered in any branch of the Armed Forces or the Character of Discharge received therefrom may have a bearing. In regard thereto, I desire to make a statement; I refuse to accept a discharge under other than honorable conditions and demand trial by court martial.
Plaintiff asserts that he was led to believe that he was being considered for discharge for reason of alleged homosexuality, and for no other reason, since he had been investigated and interrogated in the preceding six months concerning the alleged acts. Accordingly, on September 19, 1961, he requested a court-martial, pursuant to Sec Nav Instruction 1620.1 of 5 June 1953 and Bu Pers Inst. 1620.3 of 6 October 1953. On September 22, 1961, the Commanding Officer of the National Naval Medical Center, by endorsement, forwarded plaintiff’s demand, informed him that the Bu Pers Inst. 1620.3 of 6 October 1953 had been cancelled, and that plaintiff’s case was being processed under Bu Pers Manual, Article C-10311. The Commanding Officer also recommended that his case should be determined by the Chief of Naval Personnel. Plaintiff then requested the basis for the exact *139 contemplated action. In reply, plaintiff was presented with an undesirable discharge and at the same time, was informed that he was being discharged for “other good and sufficient reasons, as determined by the Chief of Naval Personnel.”
Initially, we must determine' whether Navy Regulations were complied with. The undesirable discharge was effected under 'authority of the Chief of Naval Personnel as required by Bu Pers Manual, Article C-10311(3) (f). A carefully prepared brief was furnished plaintiff. The brief set forth the military offenses and indebtedness of plaintiff. Faircloth was given an opportunity to request or waive the rights enumerated in Bu Pers Manual, Article C-10313. Thus, at first blush, it would seem that no regulations were violated.
The Board for the Correction of Naval Records, however, went over the Bu Pers Board record, and stated that:
* * * it is apparent that the record is inadequate to support the character of, or reason given for Petitioner’s discharge.
This Board’s conclusion was based on inconsistencies between approved findings of the Bu Pers Board and the discharge. Specifically, the basis for discharge, i.e., for “other good and sufficient reasons, as determined by the Chief of Naval Personnel,” could not be ascertained by the record or upon informal inquiry. Thus, as the Board stated, the reason for discharge “is a matter of sheer inquiry.” Furthermore, it found that petitioner was not processed as a homosexual, and the Board did not find him to be one.
As to plaintiff’s other offenses, the Board found that two non-judicial punishments and one summary court-martial for minor offenses would not have justified an undesirable discharge, nor would plaintiff’s indebtedness record, which showed that he was paying off his debts. Since the discharge, in the words of the Board, “constitute^] error and injustice,” the corrective action was to grant a general discharge by reason of unfitness.
Thus, the Navy’s own Board found that plaintiff’s undesirable discharge was not justified by the record, and this is in clear violation of Bu Pers Manual Article C-10311(3) *140 (f), supra, i.e., “when it is warranted by the particular circumstances in a given case.” The Government contends that this procedural irregularity was corrected when the discharge was corrected from “undesirable” to “general.” This court has stated, however, that a discharge such as the one plaintiff received here from the Board does not cure a procedural defect in granting the original discharge.
In Sofranoff v. United States, 165 Ct. Cl. 470, 478 (1964), the court stated:
Defendant argues that any defect in the procedure by which plaintiff was discharged was cured when he received a discharge under honorable conditions. We do not agree. This form of discharge is, as defendant concedes, less than an honorable one. The contention which defendant now makes was expressly rejected in Murray v. United States, 154 Ct. Cl. 185, 188 (1961). Since the vast majority of discharges from the armed forces are honorable, the issuance of any other type of discharge stigmatizes the ex-serviceman. It robs him of his good name. It injures his economic and social potential as a member of the general community. * * *
There is no doubt that a general discharge is less than an honorable discharge. The various types of discharges are listed in 32 C.F.B. § 730.2 (Bur Pers Manual, Article C-10302) in descending order of desirability, and subsection (a) describes an “Honorable Discharge” while subsection (b) describes a “General Discharge.” Plaintiff’s less-than-honorable discharge stigmatizes him. Therefore, the general discharge does not correct the procedural defect which occurred when plaintiff got an “Undesirable Discharge.”
The failure of the Board to correct plaintiff’s record in this case to show an honorable discharge may not of itself be arbitrary or capricious. There have been instances where the Board has been held to have been arbitrary or capricious, but such a determination has been the result of Board refusal to correct a record, Grubin v. United States, 166 Ct. Cl. 272, 333 F. 2d 861 (1964); Powers v. United States, 176 Ct. Cl. 388 (1966), or the result of Board refusal to grant a hearing and correct the record, Hoppock v. United States, 176 Ct. Cl. 1147 (1966). Here, the Board did not refuse to *141 correct plaintiff’s record. Nonetheless, its correction did not cure the defect below, and the original discharge, not supported by the record, was arbitrary and capricious. On this basis alone, plaintiff is entitled to recover.
Plaintiff further argues that the regulations were not followed when he Was discharged without a hearing, since he neither elected nor waived this right. Instead, thinking he was to be discharged for homosexual acts, plaintiff asked for a court-martial. The Government’s answer is that the regulation was complied with since plaintiff was afforded “an opportunity” to request or waive a hearing, and that he did not request such a field 'board hearing. This might be literally correct, but in our view the actions of plaintiff clearly show that he was requesting some kind of hearing. At the same time that plaintiff was informed of the basis for the action to be taken against him, he was given an undesirable discharge for unfitness and “other and good sufficient reasons.”
Since plaintiff was not discharged because of alleged homosexual grounds, he was never given any warning that this was not part of the case against him. The recommendation of the Commanding Officer to the Chief of Naval Personnel merely stated, in general terms, that plaintiff was unfit for service because of
* * * his pattern of misconduct and lack of cooperation in the proper management of his indebtedness problem.
Even the Administrative Discharge Board thought that homosexuality was one of the charges against plaintiff, since in its Brief of Circumstances, it recited the allegations of homosexual acts raised against plaintiff, as well as his misconduct and indebtedness.
A request for court-martial without either waiving or requesting a hearing, is not a waiver of a hearing nor a failure to request a hearing. Plaintiff, in requesting a court-martial, indicated that he intended to present his side of the question, and that he wished to defend himself against the charges made. Where such intent was clear, and where a stigma attached to a proposed discharge, plaintiff should have been told before being discharged that a court-martial *142 was not available, and that he was only entitled to a hearing, as required by the regulations. Although the facts are somewhat different, what this court said in another case applies here.
* * * [T]he serviceman * * * made a choice of options which he had on the basis of misinformation from his superiors. * * * This parallel in central theme requires an identical result, namely, to vitiate the action taken * * *. Sullivam, v. United States, 177 Ct. Cl. 518, 526-27 (1966).
Plaintiff is asking for the remuneration he would have received but for his discharge. Since, as we have indicated, Navy Regulations were not followed in discharging plaintiff, and this irregularity was not cured, and further, since any action plaintiff took regarding his discharge has been vitiated, because of misinformation and uncertainty caused by the Navy itself, we hold 'that plaintiff is entitled to recover.
Accordingly, plaintiff’s motion for summary judgment is granted, defendant’s cross-motion is denied, and judgment is entered for plaintiff, with the amount of recovery to be determined in further proceedings pursuant to Rule 47(c).

 For the text of the Bu Pers Manual sections which were in effect at the time of the events described herein, see the sections of Title 32 of the Code of Federal Regulations (Revised as of January 1, 1962) which are cited in the text of this opinion.