**John D. HOLLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–254C.**

United States Court of Federal Claims.

Nov. 2, 1994.

**266**

Guy J. Ferrante, Falls Church, VA, for plaintiff.

Edmund W. Chapman, with whom were Acting Atty. Gen. Stuart E. Schiffer, Director David M. Cohen, and Asst. Director James M. Kinsella, for defendant. LTC W. Gary Jewell, Major Jill M. Grant, Office of the Judge Advocate Gen. Dept. of the Army, Arlington, VA, of counsel.

## OPINION

LYDON, Senior Judge:

In this military pay case, plaintiff, a former commissioned Regular Army Officer in the United States Army, challenges the validity of his separation from military service. Both parties have moved for summary judgment. The question presented to the court by these motions is whether plaintiff should have been afforded a hearing before he was separated from military service. Having considered the numerous briefs submitted by the parties, and having had the benefit of oral argument, the court concludes that plaintiff's cross-motion for summary judgment should be granted.

### Facts

Plaintiff graduated from West Point on June 20, 1986 at which time he was commissioned a second lieutenant in the Regular Army and entered into active duty. Plaintiff was assigned on March 17, 1987 to the 2nd Battalion 27th Field Artillery, 3rd Armored Division in Freidburg, Germany.

On May 1, 1987, at a party given by another officer, a lieutenant, plaintiff in conversation with an informant, solicited the informer to come to his house to party. There was an implication on the part of plaintiff, according to an investigative report of the matter, that illegal drugs were to be used. The investigation utilized informal procedures under AR 15-6. The informant submitted a "Sworn Statement" on May 13, 1987, and plaintiff submitted a "Sworn Statement" on May 21, 1987. In his statement plaintiff said, "On May 1, 1987, anything that was said by me that night was in jest in a partying atmosphere. The results of my urinalysis will prove that I have had no contact with illicit drugs. Also, a search of my apartment is welcome at any time."

The investigating officer, an Army Captain, prepared a report dated May 26, 1987 for the battalion commanding officer. Plaintiff, when interviewed by the investigating officer, was read his rights and elected not to make any statement without consulting legal counsel first. After consulting with legal counsel, plaintiff neither admitted nor denied his conversation with the informant but did provide the May 21 statement referred to above. The investigating officer found that the conversation above did take place and in context did contain an implication on the part of plaintiff that illegal drugs were to be used at the party at his house, which would have been in violation of Art. 112a, 10 U.S.C. § 912a, Uniform Code of Military Justice. Since plaintiff did not deny that the conversation took place, the investigating officer was of the opinion that plaintiff conducted himself in an unacceptable manner.

The investigating officer recommended that plaintiff be reprimanded by the Battalion Commander for conduct unbecoming an officer and that plaintiff be administratively disqualified from performing nuclear duties, opining that plaintiff failed to demonstrate acceptable social behavior in keeping with the high standards expected of a member of the Personnel Reliability Program; regardless of the situation an officer, the investigat-

ing officer stated, is not permitted to make any statements "in jest."[1]

At some point after December 15, 1987, a noncommissioned officer subordinate of plaintiff initialed a "Sworn Statement" which read as follows:

On Tuesday 15 December 1987 at about 1800 hours I received a telephone call at my quarters from 2LT Holley. During this call he told me he had a personal problem that he needed to discuss with me. I agreed to meet him at the Valencia Restaurant in Bad Nauheim at 2030 hrs. When I got there LT Holley was sitting at a table eating. I sat down and we began to talk. During our conversation LT Holley told me that he was afraid he was going to come up "hot" [positive] on the urinalysis he had taken that morning. He said he had smoked hash on the previous weekend on 2 occasions and had been drunk at both times. I asked him if he smoked often and he told me that he had not smoked since before the last Graf density [a field exercise in Grafenwoehr, Germany]. I told him that in my opinion the chances were that he would come up positive. We then left the restaurant and drove to my quarters, the conversation continued, and LT Holley told me that he had contaminated his sample with salt. He asked me if that would keep it from coming (sic) back positive and I replyed (sic) that I didn't think so. Shortly afterwards I drove him home.

Plaintiff agrees this statement was written by the non-commissioned officer but does not agree that it represents a faithful recap of or any truth to the subject of the conversation between plaintiff and the noncommissioned officer at that time.

On March 29, 1988, plaintiff acknowledged receipt of a General Officer Letter of Reprimand. At the same time, plaintiff elected to submit a written rebuttal. The Letter of Reprimand, dated March 10, 1988, read as follows:

1. On 15 December 1987, you told a senior noncommissioned officer in your battery that you had smoked marijuana in the hashish form twice during the previous weekend. You further stated that you had attempted to tamper with your urine sample submitted pursuant to a unit urine inspection. This was not the first time soldiers within your battalion reported your comments concerning illegal drug use. On 1 May 1987, you made similar comments to a confidential informant at a party given by another officer.

2. You are reprimanded for your misconduct. As a commissioned officer you are held to a higher standard of conduct than other soldiers. Suggesting to soldiers that you use illegal drugs, even if done in jest, falls far short of that standard. Drug abuse is not a joking matter. Your conduct has compromised your status as an officer and has eroded the confidence and respect that soldiers must have for the authority of the officer corps. These incidents raise serious questions about your judgment and future value to the US Army.

3. This letter of reprimand is imposed as an administrative measure and not as punishment under Article 15, UCMJ.

4. I intend to file this letter of reprimand in your Official Military Personnel File. You may examine the documentation that serves as a basis for this reprimand. You have five calendar days from the date you received this reprimand to acknowledge receipt and submit comments or matters in rebuttal. If you fail to reply within the required time, this letter will be filed as indicated.

---

1. In an unsworn statement plaintiff appended to its cross-motion for summary judgment, an attendee at the May 1, 1987 party stated that plaintiff was known for making outlandish remarks, and entertaining others with his crazy philosophies. "The problem occurred [the attendee stated, in pertinent part] when Lt. Holley invited the Germans [guests at the party] to his place for a cocaine party." According to the attendee, "[O]f course this was said only for shock value as Lt. Holley would then await their reaction. The *American soldier* [the informant] did not know Lt. Holley or his character and therefore thought Lt. Holley was serious. He then proceeded to turn Lt. Holley in to the CID. Lt. Holley had also offered to sell them a Pershing missile but that was not included in the report [presumably the Investigative Report of May 26, 1987]."

On April 1, 1988 plaintiff submitted the following response to the Letter of Reprimand:

I request that the Letter of Reprimand be dismissed. All evidence has been circumstantial and has been disproven (sic) by every urinanalysis (sic) to date. My job performance with in 2/82 FA has met all standards and I solicit you to question any officer, NCO, or soldier with whom I work with about my dedication to accomplishing all missions.

On April 11, 1988 the commanding officer issued the following directive to the commander at the U.S. Army Military Personnel Records Center:

I have reviewed the basic correspondence and matters in rebuttal submitted by 1LT John D. Holley. I direct that the letter of Reprimand be filed in his Official Military Personnel File.

Plaintiff received an Officer Evaluation Report (OER) covering the period February 22, 1987—February 4, 1988. Plaintiff was characterized as "a technically competent, enthusiastic leader," "has the requisite qualities to excel," and "on duty, he is a superb officer." The OER also stated: "Off duty, however, 1LT Holley [plaintiff was promoted to First Lieutenant on December 14, 1987] has displayed a lack of good judgment by making remarks detrimental to the good order and discipline of the officer corps. Once corrected, he will be an excellent officer." The OER concluded as follows:

With all the excellent things that 1LT Holley has accomplished in recent months, his off duty actions have overshadowed them and has somewhat discredited him as a commissioned officer and future leader. I am not confident that 1LT Holley can overcome this stigma and I question his future value to this unit and the Army. It is for this reason that I rate him at the bottom of 21 Lieutenants in this battalion.

The Battalion commander, LTC Roy T. Scales, signed this OER as the "Senior Rater." Two other officers, a first lieutenant and a captain, also signed the OER as "Rater" and "Intermediate Rater."

Plaintiff acknowledged receipt of this OER on March 9, 1988, and although advised he could submit comments on the OER to the commanding officer, advised, in writing, that he did not desire to submit comments thereon.

By Memorandum dated December 1, 1988, plaintiff was notified of the Army's "Initiation of Elimination," which read in pertinent part as follows:

1. You are required to show cause for retention on active duty under the provisions of paragraphs 5–11b [Failure to keep pace or to progress with contemporaries, etc.] and 5–12a(6) [Acts of personal misconduct] and (10) [Conduct unbecoming officer], AR 635–100 because of substandard performance of duty and misconduct.

2. This action is based on the following specific reasons for elimination:

a. Low record of efficiency when compared with other officers of the same grade, branch, and length of service. Officer Evaluation Report for the period 870212–880204 (encl 1) indicates you displayed a lack of good judgment by making remarks detrimental to the good order and discipline of the officer corps.

b. Acts of personal misconduct. You received a Letter of Reprimand (encl 2) dated 10 March 1988 which indicates that on 15 December 1987 you told a senior noncommissioned officer in your battery that you had smoked marijuana in the hashish form twice during the previous weekend. You further stated that you had attempted to tamper with your urine sample submitted pursuant to a unit urine inspection. On 1 May 1987 you made similar comments to a confidential informant at a party given by another officer.

c. Conduct unbecoming an officer. Same as 2b above.

\* \* \* \* \* \*

5. I am recommending you be discharged with a General Discharge. If an Honorable Discharge or General Discharge is recommended, your case will be forwarded directly to HQDA for submission to the Assistant Secretary of the Army (Manpow-

er and Reserve Affairs), without referral to a board of inquiry. The least favorable discharge you may receive is an Under Other Than Honorable Conditions Discharge. The final decision on the type of discharge will be determined by HQDA.

6. Before taking further action, I will consider all written comments or rebuttal that you may submit with your acknowledgement.

7. In accordance with AR 635–100, paragraph 5–14.1c you may:

a. Submit your resignation in lieu of elimination in accordance with AR 635–100, Chapter 5, as changed and AR 635–120, Chapter 4, as changed. You may not request an effective date. The effective separation date will be no later than 21 days after receipt of written notification of an approved resignation.

b. Request discharge in lieu of elimination (RA commissioned officer only) in accordance with AR 635–100, Chapter 5, as changed and AR 635–120, Chapter 10. You may not request an effective date. The effective date will be no later than 21 days after receipt of written notification of the approved discharge.

c. In lieu of resignation or discharge, submit a rebuttal statement and, if a discharge under other than honorable conditions is recommended, request appearance before a board of inquiry.

The Memorandum was signed by Gerald H. Putman, Brigadier General, USA, Director of Office of Personnel Management. It is noted that a hearing was not one of the options offered to plaintiff in this Memorandum.

In implementation of the "Initiation of Elimination," on December 12, 1988 the following instruction set out below, in pertinent part, was issued by the Chief, Personnel Actions Division through Army channels:

1. Action is being taken UP paragraphs 5–11b and 5–12a(6) and (10), AR 635–100 recommendation that 1LT Holley be required to show cause for retention on active duty.

2. If officer elects to submit a rebuttal, it will be forwarded thru command channels to arrive at 1st Personnel Command,

ATTN: AEUPE–PSSD–PSR, APO NY 09081 NLT 21 days after submission.

3. If officer elects to appear before a Board of Inquiry, General Officer Show Cause Authority (GOSCA) will process case in accordance with AR 635–100, Chapter 5. Particular attention should be paid to Interim Change No. IO2 dated 2 July 1988.

The above instructions were further refined as set out below in pertinent part, on January 6, 1989 as they made their way to plaintiff:

1. Request you advise 1LT John D. Holley Jr. that he is required to show cause for retention on active duty. This action is based on a low record of efficiency and acts of personal misconduct. This information is contained in the enclosures.

2. 1LT Holley is required to select one of the following courses of action:

a. Request discharge in lieu of elimination.

b. Request resignation in lieu of elimination.

c. Submit a rebuttal statement.

3. Official notification to 1LT Holley further explaining his options is attached.

4. 1LT Holley is required to complete, sign, and date the enclosed notification document and return it to this headquarters.

Thereafter, plaintiff acknowledged receipt of the December 8, 1988 "Initiation of Elimination" letter and submitted therewith his rebuttal statement. Plaintiff's rebuttal statement dated February 13, 1989 read, in pertinent part, as follows:

1. I respectfully disagree with this elimination packet and request retention as a US Army Officer.

2. Both the Letter of Reprimand and the substandard OER arose out of the same incidents from May and December 1987. I took full responsibility for these improprieties, and have since then worked very hard to overcome them, and to prove myself as an asset to the Officer's Corps.

3. Following the Letter of Reprimand and substandard OER, I have proven myself worthy of retention. My Battalion

Commander, LTC Scales, rated me in May 1988, and placed me in the "two" block. He also made some very positive comments concerning my duty performance and personal behavior (Enclosure 2).

4. Since December 1987, I have received three Army Achievement Medals for outstanding service. I was selected to organize, train, and coordinate all functions as the 2d Battalion, 82d Field Artillery Officer–In–Charge of the Nijimegen 100 mile road march. I received an Army Achievement Medal for that action (Enclosure 3). In January 1989, my team of soldiers and I won recognition in the field of fire direction during our Battalion ARTEP. Our effort, and that of the battalion, resulted in the finest and most timely shooting for a Field Artillery ARTEP at Grafenwoehr since the late 1970's (Enclosure 4). Finally, as a Fire Direction Officer, I ensured the training of my soldiers to the "DIVARTY BEST" in fire direction during a Sweepstakes event in November and December 1988 (Enclosure 5).

5. During the past year, I have worked very hard for my battalion in order. to dispel any doubts about my integrity and dedication to the battalion, and the US Army. LTC Scales has demonstrated his trust in my character, and my leadership abilities, by assigning me to a Fire Direction Officer slot despite the prior negative OER, which he signed. Additionally, he is considering me for a platoon leadership slot once the decision about my retention is made. I believe my relationship with other officers, NCO's, and soldiers, is solidly based on trust. My performance, both on and off duty, has been honorable, and my record since 1987 is spotless.

6. Respectfully request retention as a US Army officer.

On February 13, 1989, the Commanding Officer, Freidburg, Germany, LTC Roy T. Scales, sent his recommendation to the commander, U.S. Army Total Army Personnel Agency in Alexandria, Virginia. His recommendation read as follows:

1. Recommend First Lieutenant John D. Holley be retained in the U.S. Army and allowed promotion opportunity to Captain.

2. His comments reference current duty performance are as accurate as he describes them. His response to counseling and mentoring has been superb. I want to make him a Platoon Leader now. The bad experiences of past problems have matured this officer. His manner of performance at this point ranks with the very best of my 25 lieutenants.

3. Should he not be allowed to remain in the U.S. Army, an Honorable Discharge Certificate is recommended. However, John D. Holley should be retained.

On March 31, 1989, the Deputy Assistant Secretary of the Army approved plaintiff's elimination from Army service.[2] On June 2, 1989, plaintiff was separated from the United States Army. Plaintiff was given a General Discharge Under Honorable Conditions certificate. The Certificate Of Release Or Discharge From Active Duty, DD Form 214, read in pertinent part:

2. In the documentation attendant to plaintiff's discharge, it was noted that plaintiff was a graduate of the United States Military Academy (USMA), Class of 1986, and thus was subject to recoupment of a portion of the total amount expended on his education at the USMA. It was determined that the total cost expended on his education was $67,416. This amount was to be prorated and plaintiff was to be required to reimburse the Government for that portion of the cost of his education not satisfied by active service. At oral argument, the court was advised that plaintiff has not been required to reimburse the Government in this regard.

SPECIAL ADDITIONAL INFORMATION *(for use by authorized agencies only)*

| 21. TYPE OF SEPARATION<br>DISCHARGE | | 24. CHARACTER OF SERVICE *(Includes upgrades)*<br>UNDER HONORABLE CONDITIONS | |
| 25. SEPARATION AUTHORITY<br>AR 635-120, CHAPTER 10 | | 26. SEPARATION CODE<br>JNC | 27. REENLISTMENT CODE<br>N/A |
| 28. NARRATIVE REASON FOR SEPARATION<br>MISCONDUCT MORAL OR PROFESSIONAL DERELICTION OR IN INTEREST OF NATIONAL SECURITY | | | |
| 29. DATES OF TIME LOST DURING THIS PERIOD<br>NONE | | | 30. MEMBER REQUESTS COPY<br>JOH *initials* |

It is noted that although plaintiff in the "Initiation of Elimination" Memorandum of December 1, 1988 was charged with a "Low record of efficiency when compared with other officers of the same grade, branch and length of service," [par. 5–11b of AR 635–100] the above DD Form 214 does not list this charge as a basis for his discharge. It is reasonable to conclude that work performance was not the reason for plaintiff's discharge. Indeed, plaintiff's on duty work performance, in the eyes of his commanding officer, was excellent and his recommendation of February 13, 1989, set forth above, undoubtedly caused the "Low record of efficiency" charge to be deleted from the narrative reason for separation set forth in DD Form 214.

Plaintiff was not afforded an opportunity to appear before a board of inquiry or afforded any form of hearing before his discharge from the Army. While plaintiff did not request an appearance before a Board of Inquiry, the above facts indicate that any such request most probably would not have been granted since plaintiff was recommended for a General Discharge Under Honorable Conditions.[3]

### Discussion

Plaintiff contends that his discharge from the Regular Army without the benefit of a hearing violated his procedural rights under 10 U.S.C. §§ 1181–1185 (1980). Section 1185 specifically provides for a hearing before separation of a Regular Army officer. Alternatively, plaintiff argues that failure to proffer a hearing before issuing a General Discharge Under Honorable Conditions deprived him of his "fundamental right to due process of law." Defendant maintains that plaintiff was not discharged pursuant to 10 U.S.C. § 1181 *et seq.*, but was discharged pursuant to 10 U.S.C. § 630 (1981) which relates to the separation of Regular Army officer who have less than five years of service.[4] As a result, defendant argues, plaintiff does not have a statutory or regulatory right to a hearing. Further, defendant argues that plaintiff has failed to establish the existence of any property or liberty interest sufficient to give rise to any due process of law violation.[5]

---

**3.** Further, in the "Initiation of Elimination" letter to plaintiff, he was advised, *inter alia,* that while a General Discharge was recommended, an Honorable Discharge was possible, since the final determination as to the character of the Discharge was to be made by the Deputy Assistant Secretary of the Army. Accordingly, plaintiff was really in no position to ask for a hearing until the final determination was made because had he received an Honorable Discharge without any stigma connotations he would not have been entitled to a hearing under the regulations or case law.

**4.** As noted earlier, plaintiff entered on active duty with the Regular Army on June 20, 1986. Plaintiff was discharged on June 2, 1989. Accordingly, plaintiff had served almost three years on active duty with the Army at the time of his discharge. 10 U.S.C. § 630 provides, in pertinent part, that the Secretary of the Army "under regulations prescribed by the Secretary of De-

fense" (1) may discharge any regular officer on the active-duty list who—(A) has less than five years of active commissioned service; 10 U.S.C. § 630 does not specifically provide for a hearing. The provisions of 10 U.S.C. §§ 1181–1187, which governs the Separation Of Regular Officers For Substandard Performance Of Or For Certain Other Reasons specifically provides for a hearing prior to separation. *See* 10 U.S.C. § 1185.

**5.** Plaintiff did not seek relief from the Army Board for Corrections of Military Records (10 U.S.C. § 1552) or the Army Discharge Review Board (10 U.S.C. § 1553). Defendant, while noting the existence of these two avenues of administrative relief, has not advanced failure to exhaust administrative remedies as a viable defense to plaintiff's action in this court. Such remedies are generally viewed as permissive, not mandatory remedies. *See e.g., Cunningham v. United States,* 212 Ct.Cl. 451, 470, 549 F.2d 753, 765

## A. *Statutory/Regulatory Right to A Hearing.*

■ It is clear that under 10 U.S.C. § 1185 a Regular Army officer is entitled to a hearing before a Board of Inquiry before that officer can be separated from the service. These statutory provisions, which spell out the procedures to be followed in separating Regular Army officers, do not, *in haec verba*, exclude "probationary" (less than five years of active duty) Regular Army officers from their reach. Defendant argues that since plaintiff had less than five years of active commissioned service at the time of his separation, he must be deemed separated under 10 U.S.C. § 630 and cannot be deemed to have been separated under 10 U.S.C. §§ 1181–1187.

Resolution of this matter is clouded because the written materials leading to plaintiff's separation do not set forth the statutory basis for his separation. The separation authority cited in plaintiff's discharge certificate (DD Form 214) is "AR 635–120, Chapter 10." However, the parties have advised that this regulation is not relevant to this case. The court agrees. The same Army Regulations regarding separations for substandard performance of duty and misconduct are utilized for both probationary and non-probationary Regular Army officers.

This case, like *Font v. United States*, 219 Ct.Cl. 335, 593 F.2d 388 (1979), is a "tale of two statutes." *Font* involved a discharged serviceman with less than three years of regular Army service whose entitlement to severance pay depended on whether he had been discharged under 10 U.S.C. § 3814 (1976),[6] the predecessor of 10 U.S.C. § 630, or under 10 U.S.C. §§ 3781–3787 (1976), the predecessor of 10 U.S.C. §§ 1181–1187. Severance pay was available if the discharge in *Font* was under sections 3781–3787 but was not available if the discharge was under sec-

tion 3814. This is comparable to the situation in this case. A hearing may not be available to plaintiff in this case if the discharge was under section 630, but a hearing should have been available if the discharge was under section 1185. *Font* teaches that two tracks were available to the Army when they determined to discharge plaintiff, either section 630 or sections 1181–1187. *See Font*, 219 Ct.Cl. at 339–41, 593 F.2d at 389–91. The record in this case is such that it is difficult to ascertain which track the Army utilized.

Defendant argues that to accept plaintiff's position would render section 630 of dubious necessity because sections 1181–1187 already provided for separation of Regular Army officers. Further, defendant argues, sections 1181–1187 authorize separation of Regular Army officers at any time whereas section 630 separation authorization is limited to the first five years of a Regular Army officer's service. Thus, defendant argues, the procedural rights, especially a hearing, are greater for those who complete their probationary five-year period. While this argument may have some surface appeal, it must be rejected here as it was in *Font*. Citing to legislative history, the Court of Claims in *Font* held that the predecessor of sections 1181–1187 "was meant to be usable for younger officers, including those within the three-year probationary period (now five-year probationary period). At the same time, there was no purpose to close Chapter 361 [which contains section 3814, now section 630] as an available avenue of separating probationary officers within their first three years. *See* H.R.Rep. No. 816, 80th Cong., 1st Sess. 7 (1947); S.Rep. No. 1543 80th Cong., 2nd Sess. 3, *reprinted in* [1948] U.S.Code Cong. & Ad. News 2161, 2163." *Font*, 219 Ct.Cl. at 339, 593 F.2d at 390. Nothing in sections 1181–1187 prevent their use in this case.[7]

(1977) and *Kirk v. United States*, 164 Ct.Cl. 738, 743, 1964 WL 8525 (1964).

**6.** Section 3814 provided, "(t)he Secretary of the Army may discharge a regular commissioned officer who has less than three years of continuous service as a commissioned officer."

**7.** Moreover, if Congress intended to exempt probationary regular officers from the provisions of

sections 1181–1187 it would have done so. In a similar context, Congress specifically excluded from review procedures under the Civil Service Reform Act civilian probationary employees. *See* 5 U.S.C. §§ 4303(f)(2) and 7511(a)(1)(A)(i). That Congress did not specifically exempt probationary officers from coverage under sections 1181–1187 is not without any significance. These sections cover "... any commissioned officer (other

As plaintiff was serving in his probationary period, defendant blithely assumes that section 630 is the applicable statute. Since section 630 does not provide for a hearing, defendant argues, plaintiff was not entitled to a hearing—period. However, as demonstrated above, sections 1181–1187 are applicable to all Regular Army officers, including probationary officers, and do provide for a hearing in section 1185. *See Font, supra.* The court's task is to try and figure out which track the Army's separation train was on.

The Army did not identify in its "Initiation of Elimination" letter or in the subsequent separation process the statutory authority for its actions in separating plaintiff. From a statutory point of view, section 1185, which requires a hearing prior to separation, is available to a probationary Regular Army officer as it is to a nonprobationary Regular Army officer absent a clear statement by the Army that it is proceeding against the probationary officer under the authority of section 630. *See Font, supra.* The court must now look at the regulations implementing the above statutory authority relative to whether plaintiff was entitled to a hearing prior to separation.

Department of Defense (DOD) Regulations are not very helpful relative to the issue at hand. DOD Regulation 1332.30 dealing with "Procedures For Probationary Commissioned Officers," provides in pertinent part in Paragraph B.2 as follows:

.... If, under regulations of the Secretary concerned, the SCA [Show Cause Authority] determines the officer shall be separated with an Honorable Discharge, the SCA will submit the case to the Secretary concerned for final decision. If the SCA determines that the officer should be separated with a general discharge, the SCA may refer the case to a Board of Officers or a Board of Inquiry, as determined appropriate, or submit the case the Secretary concerned who will take a final action. If

the SCA determines that the officer should be separated with an other than Honorable Discharge, the SCA shall refer the case directly to a Board Inquiry....

The above regulation is somewhat contradictory in that a General Discharge is an "Other than Honorable Discharge." [8] *See Sofranoff v. United States,* 165 Ct.Cl. 470, 478, 1964 WL 8547 (1964). Viewed in this light, the second sentence allows for discretion in referring the officer to a Board of Inquiry for a hearing, whereas the last sentence mandates that the officer shall be referred to a Board of Inquiry for a hearing. Arguably, this DOD regulation could reasonably be read to provide that a probationary officer is entitled to a hearing prior to separation with a General Discharge, giving the officer the benefit of a contradictory and ambiguous regulation drafted by the military.

■ Elimination action initiated against a probationary officer is also governed by Army Regulations (AR) 635–100, as amended. AR 635–100, ¶ 5–30 provides in pertinent parts as follows:

\*  \*  \*  \*  \*  \*

b. Processing.

(2)(b) That if an honorable or general (under honorable conditions) discharge is recommended, there will be no board of inquiry held before the officer's case is forwarded to the Assistant Secretary of the Army (Manpower and Reserve Affairs) (see fig. 5–1, para 5).

\*  \*  \*  \*  \*  \*

c. Final determination.

(1) If the officer declines to elect one of the options listed in paragraph 5–14.1c (1) through (3), and an honorable or general (under honorable conditions) discharge is recommended, CG, TAPA will send the case to the Assistant Secretary of the Army (Manpower and Reserve Affairs) for final decision.

than a commissioned warrant office (sic) or retired officer) of the Regular Army...." *See United States v. Connolly,* 716 F.2d 882, 886 (Fed.Cir.1983); *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984); *see also United States v. Fausto,* 484 U.S. 439, 447–49, 108 S.Ct. 668, 673–75, 98 L.Ed.2d 830 (1988).

8. One could opine that the regulation in the last sentence most likely was intended to read "discharge under Other than Honorable Conditions" rather than "Other than Honorable Discharge."

(2) The Assistant Secretary of the Army (Manpower and Reserve Affairs) may direct:

    (a) Retention, or

    (b) Discharge, or

    (c) Referral to a board of inquiry. The case will be processed under Section VI, this chapter.

(3) Action by the Assistant Secretary of the Army (Manpower and Reserve Affairs), acting for the Secretary of the Army, is final.

Army Regulations before the court concerning probationary officers do not reference section 630 as a statutory source authority, nor do they reference sections 1181–1187. Assuming appropriate statutory authority, AR 635–100, ¶ 5–30 does provide in essence that a hearing before separation of a probationary Regular Army officer who received a General Discharge Under Honorable Conditions is not mandated but is discretionary.

The question remaining is whether the Army abused its discretion in failing to accord plaintiff a hearing prior to separating him from the Army with a General Discharge Under Honorable Conditions.

### B. *Due Process Right to A Hearing*

■ Plaintiff maintains that separating him with a General Discharge without a prior hearing violated minimum concepts of fairness and due process. Plaintiff argues that a General Discharge stigmatizes plaintiff, which fact requires that he be accorded a hearing prior to discharge. In *Keef v. United States*, 185 Ct.Cl. 454, 467–68, 1968 WL 9154 (1968), the Court of Claims stated, in pertinent part:

As a general rule, if the regulation pursuant to which a serviceman is honorably discharged does not, by its own terms, require notice and a hearing, they are required only if the discharge, albeit honorable, either casts a stigma on the serviceman or has some derogatory connotation. (citation omitted)

Our primary concern in these cases is to prevent the Armed Forces from imposing a penalty on a discharged serviceman without affording him some basic constitutional protection, the essence of which is notice and a hearing. As we said in *Clackum v. United States*, 148 Ct.Cl. 404, 296 F.2d 226 (1960), we will not permit the imposition of a stigma "without respect for even the most elementary notions of due process of law" (148 Ct.Cl. at 408, 296 F.2d at 228).

The dispositive issue before the court is whether plaintiff has been stigmatized by the General Discharge Under Honorable Conditions he received from the Army. If he has been stigmatized or there is some derogatory connotation associated with his discharge he was entitled, as of right, under the regulations or otherwise to a hearing prior to the issuance of such a discharge.

In *Sofranoff v. United States*, 165 Ct.Cl. 470, 478, 1964 WL 8547 (1964), the Court of Claims held that a General Discharge Under Honorable Conditions is less than an Honorable Discharge and has the effect of stigmatizing the ex-serviceman. *See Faircloth v. United States*, 186 Ct.Cl. 133, 140, 1968 WL 9160 (1968); *Murray v. United States*, 154 Ct.Cl. 185, 188, 1961 WL 8686 (1961); *see also White v. Secretary of Army*, 878 F.2d 501, 503 (D.C.Cir.1989).[9] The precedents of the Court of Claims in this regard are binding on this court. *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed.Cir.1982).

In addition to receiving a General Discharge Under Honorable Conditions, which has been determined above to be a stigmatizing event, plaintiff also received a discharge

---

9. In *Birt v. United States*, 180 Ct.Cl. 910, 912–14, 1967 WL 8881 (1967), the Court of Claims held that a discharge under honorable conditions for the convenience of the government did not carry with it a stigma or derogatory connotation, specifically distinguishing the *Sofranoff* holding. Further, in *Harrison v. Bowen*, 815 F.2d 1505, 1518 (D.C.Cir.1987) it was held that dismissal of an excepted employee for unsatisfactory job performance was not "the sort of opprobrium sufficient to constitute a deprivation of liberty." The characteristics set forth on plaintiff's DD 214 Form are potentially those that both the general

certificate, referred to as a DD Form 214.[10] On the DD Form 214, the character of his discharge is listed as "Under Honorable Conditions." On the Form, under "Narrative Reason For Separation" it is stated: "Misconduct Moral Or Professional Dereliction Or In Interest Of National Security." There is no question but that the information on plaintiff's DD Form 214 is derogatory and stigmatizing. Defendant does not argue to the contrary but instead advises that the Form is not freely made available to the public at large and thus any stigma or derogatory connotation contained thereon would be minimized.[11]

Two military discharge cases in this court have dealt with the question of derogatory information on DD Form 214's. In both cases, derogatory information on a DD Form 214 was sufficiently stigmatizing to cause the court to set aside discharges which had been issued without affording the ex-servicemen a hearing prior to their discharge. *See Rogers*

*v. United States*, 24 Cl.Ct. 676, 683–84, 689 (1991) *aff'd*, 996 F.2d 317 (Fed.Cir.1993); *Casey v. United States*, 8 Cl.Ct. 234, 241–43 (1985). A like result is called for in the case at bar. Parenthetically, in both the *Casey* and *Rogers* cases, the ex-servicemen had received honorable discharges, unlike the plaintiff in this case who received a less than honorable discharge, *i.e.*, a General Discharge Under Honorable Conditions.

### CONCLUSION

Since both the character of plaintiff's discharge; General Under Honorable Conditions, and the derogatory information on the discharge certificate (DD Form 214) were clearly stigmatizing, the failure to accord plaintiff a hearing prior to separation renders the discharge procedurally defective and thus invalid. The Assistant of the Army, acting for the Secretary of the Army, abused his discretion in not directing a hearing for plaintiff prior to his separation.[12] Plaintiff's

public and a future employer are likely to want to avoid. *See Id.* at 1518.

10. Army Regulations, AR 635–5, Ch. 2, ¶ 2–1 relating to the issuance of DD Form 214, caution service personnel that the Form "is the most vital document they will receive from the Army," that "[C]ivilian employment may be affected by data on this form," and that "[B]enefits which they may be eligible to receive as a result of military service will be based on DD Form 214."

11. Defendant argues that the presence of derogatory information on the DD Form 214 does not infringe on any projected liberty interest that plaintiff may have because the Army does not intend to publicize it and Army regulations prohibit the dissemination of such information except to the Veterans Administration, the Department of Labor and State Directors. In making this assertion defendant wears blinders and turns its back on the real world. Such an argument was rejected by the court in *Casey*. *Casey*, 8 Cl.Ct. at 242–43 (1985).

12. Defendant, in its later filed briefs, argues that the court lacks jurisdiction over plaintiff's claim because plaintiff, in essence, seeks only to clear his name and thus is not advancing a money claim. As a result, defendant argues, the claim cannot serve as a basis for awarding him back pay and reinstatement, citing *Fiorentino v. United States*, 221 Ct.Cl. 545, 607 F.2d 963 (1979), *cert. denied*, 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980). Defendant's reliance on *Fiorentino* is misplaced. In *Fiorentino*, a federal civilian attorney in the excepted service was de-

nied a hearing prior to his dismissal on charges of falsely representing himself to be a U.S. Attorney and filing false travel vouchers. The Court of Claims found the issue in *Fiorentino* to be novel *Id.* 221 Ct.Cl. at 548, 607 F.2d 963 and addressed the issue presented "with hesitation" *Id.* at 554, 607 F.2d 963. The Court of Claims held that Fiorentino, as an excepted employee, had no right to a hearing since he had no property interest in his job and thus in a "liberty" context the purpose of a hearing while providing him an opportunity to clear his name did not include the right to a hearing for purposes of reinstatement and back pay. Fiorentino noted *Id.* at 556, 607 F.2d 963 that no case had been cited to the effect that a former federal civilian employee with no property interest in his job and who is maligned in government files and denied due process to correct it can sue in the Court of Claims to obtain reinstatement and back pay. *Id.* at 556, 607 F.2d 963. It is first noted that the case at bar is a military discharge case, not a civilian discharge case. As noted in *Cornetta v. United States*, 851 F.2d 1372, 1376–77 (Fed.Cir. 1988) (*en banc*) (a soldier is not "equivalent to the civilian worker"); *cf. Sammt v. United States*, 780 F.2d 31, 32–33 (Fed.Cir.1985) (rationale re voluntary retirement in civilian pay cases applicable in military pay cases). Second, there is precedent, cited above, holding that the issuance of a General Discharge Under Honorable Conditions is a stigmatizing event which serves to void a discharge and entitles the ex-serviceman to reinstatement and back pay. This precedent is binding on this court. *See Cornetta*, 851 F.2d at 1376–77. Finally, unlike the *Fiorentino* case, the failure to accord plaintiff a hearing in this case

cross motion for summary judgment is granted and defendant's motion to dismiss or in the alternative for summary judgment is denied.

Plaintiff is entitled to be returned to active duty in the rank he was serving at the date of his discharge. Plaintiff's military records shall be corrected to show continuous constructive active duty service from the date of his improper discharge to the date of his reinstatement. Further, all references to his improper discharge shall be deleted from his military records. Plaintiff is entitled to recover back pay, allowances, and benefits, less appropriate offsets, for the period of his constructive active duty service. The Secretary of the Army is directed to accomplish the above corrections in the plaintiff's military records and to order plaintiff's reinstatement to active duty.

The parties are directed to file a stipulation as to the amount of recovery plaintiff is entitled within sixty (60) days from the date of this opinion. If the parties are unable to agree on the amount of recovery due plaintiff, further proceedings will be scheduled to determine the amount due plaintiff.

---

prior to discharge has been viewed as a procedural violation, thus naked reliance on the "liberty" concept for due process purposes is not necessary. *Cf. Fiorentino*, 221 Ct.Cl. at 548 (novelty of case was absence of any allegation of a procedural violation). In any event, one could reasonably conclude that the *Fiorentino* holding has no application where a discharge, civilian on military, without a hearing, is contaminated by stigmatization. *Sofranoff, supra* and *Harrison, supra.*