John D. HOLLEY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 92–254C.

United States Court of Federal Claims.

May 17, 1995.

Guy J. Ferrante, Falls Church, VA, for plaintiff.

Edmund W. Chapman, Washington, DC, with whom were Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, and James M. Kinsella, for defendant; Captain Mike Smith, Dept. of the Army, of counsel.

## OPINION

LYDON, Senior Judge:

This opinion addresses John D. Holley's retroactive entitlement to an overseas housing allowance (OHA) under 37 U.S.C. § 405(a) (1988).[1] The court in its previous opinion granted Holley's cross-motion for summary judgment, holding that the United States Army's discharge of Holley, without a hearing, was invalid. *Holley v. United States,* 32 Fed.Cl. 265 (1994). In accordance with that determination the court held:

> Plaintiff is entitled to be returned to active duty in the rank he was serving at the date

of his discharge. Plaintiff's military records shall be corrected to show continuous constructive active duty service from the date of his improper discharge to the date of his reinstatement.... Plaintiff is entitled to recover back pay, allowances, and benefits, less appropriate offsets, for the period of his constructive active duty service.

*Id.* at 276.

Holley was commissioned as a second lieutenant in the Army on June 20, 1986, at which time he entered into active duty. On March 17, 1987, Holley was assigned to the 2nd Battalion 27th Field Artillery in Freidburg, Germany, where he served until his discharge from service at the rank of first lieutenant, twenty-six months later on June 2, 1989.

While stationed in Germany, Holly received OHA in addition to basic pay (BP) under 37 U.S.C. § 204 (1988), and basic allowances for subsistence (BAS) and quarters (BAQ) under 37 U.S.C. §§ 402 and 403 (1988). The Army concedes that Holley is entitled to retroactive BP, BAS, and BAQ as if he had never been discharged. The parties disagree as to whether or not Holley is entitled to an OHA in addition to the basic housing allowance provided for under 37 U.S.C. § 403, during the period of his constructive service. After considering the parties' written and oral arguments, the court concludes that Holley is entitled to OHA.

### I

Defendant advances two arguments in support of its contention that Holley is not entitled to OHA: 1) that the court lacks jurisdiction over a claim for OHA, and 2) that the

---

1. 37 U.S.C. § 405(a) authorizes OHA for "a member who is on duty outside the United States." Pursuant to section 405(a):

    [T]he Secretaries concerned may authorize the payment of a per diem, considering all elements of the cost of living to members of the uniformed services under their jurisdiction ... including the cost of quarters, subsistence, and other necessary incidental expenses, to such a member who is on duty outside of the United States....

    OHA is analogous to the variable housing allowance (VHA) under 37 U.S.C. § 403a (1988).

Each is paid to servicemembers at a rate that is dependent upon the standard of living of the geographic area to which they are assigned. Each terminates upon reassignment from that geographic location. Whereas VHA applies to assignments within the territorial United States, OHA applies outside the contiguous states. Defendant argues that Holley is entitled to neither OHA nor VHA. Holley was receiving OHA at the time of his wrongful discharge and therefore claims entitlement to OHA.

quantum determination of OHA is too speculative. Both arguments are without merit.

## A

■ First, defendant argues that consideration of OHA is beyond the court's jurisdiction because OHA has no bearing upon the Army's decision to release Holley from active duty. The court, defendant maintains, does not have jurisdiction pursuant to 28 U.S.C. § 1491(a)(2) to rewrite a servicemember's record to correct speculative injustices not "incident of and collateral to" the money judgment. Defendant contends that such review by the court would conflict with the Federal Circuit's holding in *Voge v. United States*, 844 F.2d 776, 782 (Fed.Cir.1988), *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988), and the Supreme Court's holding in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Defendant is correct in stating that, "no court is capable of reviewing the substantive merits of a decision to deny [OHA], so long as the decision comports with the procedural standards mandated by statute or regulation." *See Voge v. United States*, 844 F.2d 776, 778–80 (Fed.Cir.1988) (holding that a decision to terminate additional special pay, to which a servicemember would otherwise be entitled, is subject only to review for compliance with established procedures and is not justiciable on the merits); *Adair v. United States*, 227 Ct.Cl. 345, 352, 648 F.2d 1318, 1323 (1981) (stating that a decision to award variable incentive pay is discretionary and beyond court review).

Defendant, however, mistakenly equates Holley's denial of OHA by virtue of his wrongful discharge with a discretionary decision by the Secretary. Therefore, defendant's reliance on *Voge*, and *Adair*, is misplaced. The holdings in *Voge* and *Adair* are inapposite to the facts of this case because the court in the instant case did not review the substantive merits of a decision denying

OHA. No such decision by the Secretary was ever made in this case.

The Federal Circuit in *Groves v. United States*, 47 F.3d 1140, 1144 (Fed.Cir.1995), recognized the difference between a case where a servicemember challenges a military decision terminating an award of special pay or declining to award special pay in the first place, and where a servicemember, like in the instant case, seeks to be returned to the position that he would have enjoyed but for the wrongful separation. The plaintiff in *Groves* was receiving Variable Special Pay (VSP) at the time of the court-martial proceedings against him. VSP, like OHA, is awarded at the discretion of the Secretary of the Army. *See* 37 U.S.C. § 302(b) (Supp. V 1993). The Federal Circuit noted that Groves was denied his special pay by virtue of the court-martial conviction and sentence, later overturned, and not by virtue of any discretionary decision by the Secretary. *Groves*, 47 F.3d at 1144. Likewise, in the instant case, Holley was denied entitlement to OHA due to the wrongful discharge from service, and not by any discretionary decision by the Secretary.[2]

When a court determines that a military servicemember has been wrongfully discharged, relief

has been premised upon one central principle: making the injured men 'whole'. Courts attempt to return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty. Inorder to grant such relief, courts have not been reticent to apply the legal fiction of 'constructive service'; as appellants have never been lawfully terminated from active duty, they are deemed to have served during the time of their illegal release. Accordingly [appellants are awarded] retroactive reinstatement to the positions they held on their respective dates of separation, with full active duty pay, allowances and other benefits of service. . . .

---

2. The Joint Federal Travel Regulations (JFTR) prescribe that a servicemember's entitlement to OHA begins upon reporting to a permanent duty station (PDS) overseas and terminates "on the day before the day the member departs in compliance with PCS [Permanent Change of Station] orders. . . ." Holley never received PCS orders, therefore his PDS and corresponding entitlement to OHA are the same as they were at the time of his illegal discharge from service.

*Dilley v. Alexander,* 627 F.2d 407, 413 (D.C.Cir.1980); *see also Schuenemeyer v. United States* 776 F.2d 329, 332 (Fed.Cir. 1985) (stating that a wrongfully discharged servicemember, "had the right to be treated as if he had been on active duty ... all during the period of his separation"). It is not disputed that Holley was receiving OHA at the time of his separation.

Because Holley was not denied OHA by a substantive decision on the merits, the court concludes that it has jurisdiction to enter a judgment that includes the OHA which Holley was receiving at the time of his illegal discharge from service.

### B

■ Next, defendant argues that the inclusion of OHA in the quantum determination is too speculative in nature to be considered a constructive service credit. Defendant maintains that given the facts surrounding Holley's case, the court's consideration of OHA as a constructive service credit would be conjecture because OHA cannot be calculated with a "reasonable degree of certainty." Defendant, in essence, argues that Holley is not entitled to OHA at all because defendant's "probable career reconstruction" shows that but for Holley's illegal discharge from service, Holley would have received OHA for only another ten months.

As discussed above, the court seeks to place Holley in the position he would have occupied but for his illegal discharge from service. Hence, Holley is entitled to reimbursement for "all pay and allowances that [he] would have received but for [his] illegal separation, to the extent that such sums can be calculated with a reasonable degree of certainty." *Ulmet v. United States,* 17 Cl.Ct. 679, 705 (1989), *aff'd* 935 F.2d 280 (Fed.Cir. 1991) (quoting *Dilley,* 627 F.2d at 414).

In asserting that the court cannot consider OHA to be a constructive service credit be-

cause to do so the court would have to speculate on Holley's military career path, defendant itself speculates on Holley's likely military career path. Defendant relies on Department of the Army Pamphlet 600-3, entitled *Commissioned Officer Professional Development* and Army Regulation 614-30, entitled *Oversea Service, Appendix B, Overseas Tour Lengths* to suggest that but for the fact of his discharge, Holley would have returned stateside within ten months. Even though it is "probable" that but for his illegal discharge Holley would have remained in Germany for another ten months, defendant, nevertheless, argues that Holley is not entitled to OHA for even that period of time.[3]

The court, however, does not need to speculate as to which path Holley's military career may have followed. The court's judgment had the effect of restoring Holley to the position he occupied at the time of his discharge, as if the discharge had never happened. Holley, restored to active duty by virtue of the court's judgment, is entitled to constructive active duty credit, with all corresponding back pay and allowances, for as long as he retains this status—that is, until this active duty status ends as a result of some action releasing him from active duty. *See Groves,* 47 F.3d at 1145 (citing *Garner v. United States,* 161 Ct.Cl. 73, 75, 1963 WL 8535 (1963)). No action, other than the discharge, which the court deemed illegal, has been taken to release Holley from active duty.

Defendant cites *Ulmet,* 17 Cl.Ct. at 705; *Lord v. United States,* 2 Cl.Ct. 749, 756 (1983); *Boruski v. United States,* 140 Ct.Cl. 1, 8, 155 F.Supp. 320, 324 (1957); and *Dilley,* 627 F.2d at 414, for examples of benefits courts have deemed to be too "speculative" to be considered constructive service credits. Defendant, however, does not explain how the benefits deemed to be too speculative compare to OHA.

---

**3.** Rather than persuade the court that Holley would have returned stateside within ten months, defendant's reliance on Army Pamphlet 600-3 and on Army Regulation 614-30 invites more speculation. The court notes that paragraph 13-4(b)(2) of Army Pamphlet 600-3 states that captains are assigned to the Field Artillery Officer Advance Course (FAOAC) at Fort Sill Oklahoma.

There is no indication that Holley, as a lieutenant, would have attended the FAOAC. Furthermore, although Army Regulation 614-30 states that thirty-six months is the standard tour length in Germany for a career soldier without dependents, it also states that "[s]oldiers will be encouraged to volunteer for consecutive overseas tours."

The Court of Claims in *Boruski* denied plaintiff's claim for hazard pay for performing flight duties during the period of his illegal discharge because plaintiff could not qualify for hazard pay without having actually participated in any flights. *Boruski*, 140 Ct.Cl. at 8, 155 F.Supp. at 324. OHA is not equivalent to hazard pay. As discussed earlier, OHA is awarded when a servicemember reports to an overseas PDS. *See supra* note 2. Entitlement to OHA continues until a PCS changes a servicemember's PDS. Servicemembers are not required to perform any additional duty inorder to receive OHA, they receive it by virtue of their oversea assignment.

The courts in *Lord*, 2 Cl.Ct. at 756; and *Dilley*, 627 F.2d at 414, deemed the value of commissary and post exchange privileges too speculative to calculate with "a reasonable degree of certainty." Defendant's comparison of OHA to commissary and exchange privileges is untenable. The value of commissary and exchange privileges are speculative in that their calculations are contingent on estimates of individual servicemember's shopping habits. OHA, on the other hand, can be calculated by applying the rate for a particular PDS to the length of service at that station.

In *Ulmet*, VHA (the stateside equivalent to OHA) was explicitly included as part of the "direct compensation" due to a wrongfully discharged plaintiff. *Ulmet* at 710. The court held that the plaintiff was entitled to VHA "at the appropriate rate[ ] applicable to the location where plaintiff was assigned to duty prior to his improper release." *Id.* VHA, as well as amounts for BP, BAQ, and BAS, was held to be a sum that could be calculated with "a reasonable degree of certainty."

The career path Holley would have followed but for his illegal discharge is indeed speculative, however, the court concludes that the quantum determination of OHA is not speculative. The legal fiction of constructive service places Holley in the position he was prior to the time of his illegal discharge. At that time Holley was stationed in Germany and was receiving OHA. Holley's entitlement to OHA continues as if the discharge had never occurred.

## II

The parties have stipulated that for the period covering June 2, 1989 through April 1, 1995, the accrued amount of back pay, allowances and other benefits Holley is entitled to receive is $257,185.51, less a setoff in civilian earnings of $83,761.91, or the sum of $173,423.60. The parties have further stipulated that the following amounts (debts) be withheld from the $173,423.60 as follows:

| | | |
|---|---|---|
| Debt on July 1989 Final Leave and Earnings Statement Balance of Casual Pay dated June 2, 1989 | | 42.93 |
| SGLI July 1989 - March 1991, 21 Mos. @ 4.00 | | 84.00 |
| SGLI April 1991 - December 1994, 45 Mos. @ 8.00 | | 360.00 |
| Accrued Leave, Basic Pay 02(2) @ 2,302.15 (41 days) July 1989 Final LES | | 2,302.15 |
| | Subtotal | $ 2,789.08 |
| FICA Tax @ 7.65% of $82,130.32 | | 6,282.97 |
| Federal Tax @ 28% of 84,913.77 | | 23,775.86 |
| State Tax (AL) @ 3% of $84,913.77 | | 2,547.41 |
| | Total | $35,395.32 |

with the amount of $138,028.28 to be paid plaintiff as a judgment herein.

## III

Accordingly, the Clerk shall enter judgment for plaintiff in the total amount of $173,423.60, with the amount of $23,775.86 to be withheld for the payment of federal income taxes, the amount of $6,282.97 to be withheld for the payment of FICA taxes, the amount of $2,547.41 to be withheld for the payment of Alabama state taxes, and the amount of $2,789.08 to be withheld for the payment of administrative debts, as set forth in the stipulation, with the remaining amount of $138,028.28 to be paid plaintiff.

Plaintiff's records are to be corrected in accordance with this judgment and the prior opinion of this court in 32 Fed.Cl. 265 (1994). No costs.